UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Philadelphia Newspapers, LLC, et al.,[1] | ) Case No. 09-_____ (___) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING
EMPLOYMENT AND RETENTION OF JEFFERIES & COMPANY, INC.,
AS FINANCIAL ADVISOR, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court, pursuant to this application (this "Application"), for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Jefferies & Company, Inc. ("Jefferies"), as financial advisor for the Debtors, effective *nunc pro tunc* to the Petition Date (defined below). In support of this Application, the Debtors rely on the Declaration of Thomas C. Carlson of Jefferies (the "Carlson Declaration") attached hereto as **Exhibit B**, and the Declaration of Richard Thayer, Executive Vice President of the Debtors (the "First-Day Declaration"), filed concurrently herewith. In further support of this Application, the Debtors respectively represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PMH Acquisition, LLC (1299), Broad Street Video, LLC (4665), Philadelphia Newspapers, LLC (3870), Philadelphia Direct, LLC (4439), Philly Online, LLC (5185), PMH Holdings, LLC (1768), Broad Street Publishing, LLC (4574) and Philadelphia Media, LLC (0657).

### Jurisdiction

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of Pennsylvania (the "Local Rules").

### Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these Chapter 11 Cases.

5. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Richard R. Thayer, the Executive Vice President, Finance of the Debtors In Support of First Day Motions* filed on February 22, 2009 [Docket No. __] and incorporated herein by reference.

6. These Chapter 11 Cases principally are balance sheet restructuring cases, not operational restructuring cases. The Debtors' assets and going concern value are worth less today than they were worth in 2006, like virtually every other asset and business in United States, be it

houses, retail, automotive, newspapers or stocks. The Debtors, however, generate positive EBITDA. In 2008, the Debtors generated approximately $36 million in earnings before interest, taxes, depreciation and amortization, adjusted for certain one time items ("Adjusted EBITDA"). The Debtors project Adjusted EBITDA for 2009 in excess of $25 million. The Debtors intend to use cash collateral and debtor-in-possession financing to operate their business while they explore various restructuring alternatives.

### Relief Requested

7. The Debtors seek the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Local Rule 2016-1, authorizing the employment and retention of Jefferies in accordance with the terms and conditions set forth in that certain engagement letter among the Debtors and Jefferies, dated February 7, 2008 (as amended on May 2, 2008, the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C**.

### The Retention of Jefferies

**A.  Jefferies' Qualifications**

8. Jefferies is an investment banking firm with its principal office located at 520 Madison Avenue, New York, New York 10022. Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Boston Stock Exchange, the International Stock Exchange, the Financial Industry Regulatory Authority, the Pacific Stock Exchange, the Philadelphia Stock Exchange and the Securities Investor Protection Corporation. Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group, Inc. Jefferies Group, Inc. is a public company and, together with its subsidiaries, has over $23 billion in assets and approximately 2,200 employees in over twenty offices around the world.

9. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions and divestitures, (iii) special committee assignments, (iv) capital raising and (v) corporate restructurings.

10. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies and purchasers in many reorganizations. Since 2000, these professionals have been involved in restructuring liabilities of over $100 billion.

11. Jefferies has extensive experience in reorganization cases and has an excellent reputation for services it has rendered in large and complex Chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States such as: <u>In re AmeriServe Food Distrib., Inc.</u>, <u>In re Ames Dep't Stores, Inc.</u>, <u>In re Diamond Brands Operating Corp.</u>, <u>In re Federal Mogul Corp.</u>, <u>In re Heartland Wireless Comms.</u>, <u>In re ICO Global Comms. Servs. Inc, et. al.</u>, <u>In re Int'l Wireless Comm., Inc., et. al.</u>, <u>In re Kaiser Group Int'l Inc.</u>, <u>In re Amerco, Inc.</u>, <u>In re Budget Group, Inc.</u>, <u>In re Exide Techs. Inc.</u>, <u>In re Formica Corp.</u>, <u>In re Atkins Nutritionals, Inc.</u>, <u>In re WXH Corp.</u>, <u>In re XO Comms. Inc.</u> and <u>In re VF Brands Int'l</u>.

12. In light of the size and complexity of these Chapter 11 Cases, the Debtors require the services of a seasoned and experienced financial advisor and one that is familiar with (i) the Debtors' business and operations and (ii) the Chapter 11 process. Additionally, the Debtors believe that by having a financial advisor provide these services in these bankruptcy cases, other professionals in these cases – and company officers who might otherwise handle complex financial and financing matters – will be able to focus better on their respective competencies

and their core tasks: to efficiently and effectively manage the Debtors' business and operations and to facilitate a successful Chapter 11 process.

13.    As a result of the prepetition engagement of Jefferies by the Debtors, Jefferies is familiar with the Debtors' business operations, capital structure, financing documents and other material information and is able to assist the Debtors in their restructuring efforts. The Debtors believe that Jefferies is well qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. Jefferies has indicated a willingness to act on behalf of the Debtors and subject itself to the jurisdiction and supervision of the Court. Additionally, the Debtors have been advised by Jefferies that Jefferies will coordinate with the other retained professionals in this bankruptcy case to eliminate unnecessary duplication or overlap of work. The Debtors submit that the employment and retention of Jefferies would be in the best interest of the Debtors, their estates and creditors.

**B.    Services to Be Provided**

14.    As further set forth in the Engagement Letter, the Debtors have requested that Jefferies serve as financial advisor during these Chapter 11 Cases to perform a broad range of services (the "Services") on behalf of the Debtors, which include:[2]

> a.    providing advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as financial advisor and investment banker to the Debtors in connection with, any potential restructuring of the Debtors' outstanding indebtedness through any offer by the Debtors with respect to any outstanding Debtors indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Engagement Letter.

        other plan pursuant to chapter 11, Title 11 of the United States Code, the execution of any agreement giving effect thereto, an offer by any party to exchange or acquire any outstanding Debtors indebtedness, or any similar balance sheet restructuring involving the Debtors (any such transaction considered in this paragraph is hereinafter referred to as a "Debt Restructuring");

b.   providing advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting, and identifying potential investors in, any financing transaction on behalf of the Debtors pursuant to a rights offering or other offering of public or private securities (whether in the form of debt, equity or equity-linked securities), or any other similar transaction or series of transactions or any combination thereof, and acting, at the request of the Debtors, as placement agent or underwriter for the Debtors with respect to any such capital raise (any such transaction considered in this paragraph occurring subsequent to Jefferies commencing a process for a financing transaction seeking capital from a third party at the Debtors' request is hereinafter referred to as a "Capital Raise," which together with a Debt Restructuring, is hereinafter referred to as a "Restructuring");

c.   becoming familiar with, to the extent Jefferies deems appropriate, and analyzing, the business, operations, properties, financial condition and prospects of the Debtors;

d.   advising the Debtors on the current state of the "restructuring market";

e.   assisting and advising the Debtors in developing a general strategy for accomplishing the Restructuring;

f.   assisting and advising the Debtors in implementing a Restructuring on behalf of the Debtors;

g.   assisting and advising the Debtors in evaluating and analyzing a Restructuring, including the value of the securities, if any, that may be issued to anyone in any such Restructuring; and

h.   rendering such other financial advisory or investment banking services as may from time to time be agreed upon by the Debtors and Jefferies.

## C.   Professional Compensation

15.   Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person

1112/99999-701 Current/13569634v2

PMH_-_Application_to_Employ_Jefferies_02 22 09_2000

under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

16. As set forth more fully in the Engagement Letter, and subject in its entirety to the terms set forth in the Engagement Letter, Jefferies will be compensated for the Services, subject to Court approval, in the following manner (the "Fee Structure"):[3]

    a. The Debtors shall pay to Jefferies a monthly fee (the "Monthly Fee") equal to $150,000 per month, payable on the monthly anniversary of the execution of the Engagement Letter.

    b. In addition, in consideration of the services rendered by Jefferies under the Engagement Letter, the Debtors will pay or cause to be paid to Jefferies a transaction fee (the "Transaction Fee") in an amount equal to $1,500,000 payable upon consummation of a Debt Restructuring, including, without limitation, upon the effective date of a confirmed plan or reorganization pursuant to chapter 11 of the Bankruptcy Code, whether or not through the use of cramdown procedures. Up to $225,000 of the Monthly Fees actually paid to Jefferies shall be credited against the Transaction Fee payable, if any.

    c. Upon the consummation of a Capital Raise, the Company and Jefferies will, in good faith, agree on an appropriate fee, which fee shall be based on the prevailing market for similar services.

17. Subject to approval of this Court and the terms of the Engagement Letter, the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement.

---

[3] All terms set forth herein are subject in their entirety to the Engagement Letter. Except as explicitly stated herein, to the extent anything set forth in this Application conflicts with the Engagement Letter, the Engagement Letter controls.

18. The Debtors believe that the Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Jefferies in the Engagement Letter.

19. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Jefferies in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees. In order to induce Jefferies to do business with the Debtors, the fees were set with consideration of the difficulty of the assignment and the potential for failure (among other things).

20. Jefferies' restructuring capabilities, mergers and acquisitions expertise as well as its capital markets knowledge and financing skills and experience, some or all of which may be required by the Debtors during the term of Jefferies' engagement hereunder, were important factors to the Debtors in determining the Fee Structure and the Debtors believe that the ultimate benefit to the Debtors of Jefferies' services hereunder cannot be measured merely by reference to the number of hours to be expended by Jefferies' professionals in the performance of such services.

21. The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Jefferies and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Jefferies and that the actual time and commitment required

of Jefferies and its professionals to perform the Services may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

22.  In light of the foregoing, the Debtors believe that the Fee Structure is both fair and reasonable under the circumstances of this engagement.

23.  Prior to the Petition Date, Jefferies received approximately $1,967,787 from the Debtors for prepetition services rendered and expenses incurred in advising the Debtors. Jefferies has already received payment on account of all fees and materially all expenses incurred up to the filing. The Debtors and Jefferies have agreed that Jefferies will hold as a retainer any excess amount from its February 2009 monthly retainer payment (approximately $30,000) and apply such excess amount towards any remaining minimal prepetition expenses and then against any postpetition fees and expenses.

24.  In accordance with Section 504 of the Bankruptcy Code, Jefferies has informed the Debtors that there is no agreement or understanding between Jefferies and any other entity, other than an employee of Jefferies, for the sharing of compensation received or to be received for services rendered in connection with these cases.

**D.  Jefferies' Disinterestedness**

25.  Based upon the Carlson Declaration attached hereto as **Exhibit B** and subject to the disclosures made therein, Jefferies has informed the Debtors that Jefferies: (a) is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b); and (b) does not hold or represent an interest adverse to the

Debtors' estates[4]. Furthermore, except as disclosed in the Carlson Declaration, Jefferies has indicated that based on the results of its computer database research conducted to date, and to the best of its knowledge, neither Jefferies, nor any employee thereof, has any connection with the Debtors, its creditors, equity holders, or any other parties in interest (as reasonably known to Jefferies) or their respective attorneys and accountants, or the United States Trustees or any person employed in the office of the United States Trustee.

26. Jefferies has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Carlson Declaration, Jefferies will promptly disclose such information to this Court, creditors of the Debtors and the United States Trustee.

E. **Fee Application and Waiver**

27. Jefferies has informed the Debtors that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. However, Jefferies' restructuring professionals, when formally retained in Chapter 11 cases and when required by local rules, do, and in these Chapter 11 Cases will, keep time records describing their general daily activities, the identity of persons who performed such activities, and the estimated amount of time expended on such activities on a daily basis; although, apart from the time recording practices described above, Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. As such, the Debtors respectfully submit that the time descriptions that

---

[4] Jefferies has already received payment on account of all fees and materially all expenses incurred up to the filing. The Debtors and Jefferies have agreed that Jefferies will hold as a retainer any excess amount from its February 2009 monthly retainer payment (approximately $30,000) and apply such excess amount towards any remaining minimal prepetition expenses and then against any postpetition fees and expenses.

Jefferies' restructuring personnel intend to submit to the court should be sufficient for any review of the time entries in connection with a subsequent fee application.

28.  Jefferies intends to apply to the Court for payment of compensation and reimbursement of fees and expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee for the Eastern District of Pennsylvania (the "<u>United States Trustee</u>") and the Local Rules and orders of this Court and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

### F.    Other Provisions of Engagement Letter

*Indemnity Provisions*

29.  As set forth in the Engagement Letter and Schedule A thereto and subject to the terms and conditions therein, the Debtors agreed to the following (the "<u>Indemnity Provision</u>"):

    a.  the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "<u>Indemnified Persons</u>"), to the fullest extent lawful, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of their owners, parents, affiliates, security holders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred (collectively, "<u>Losses</u>"), related to or arising out of or in connection with Jefferies' services under the Engagement Letter, any Restructuring or any proposed transaction contemplated by the Engagement Letter, or any Indemnified Person's role in connection therewith, <u>provided</u>, <u>however</u>, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, nonappealable judgment by a court, or arbitral tribunal, to have resulted primarily from Jefferies' or any Indemnified Person's gross negligence or willful misconduct.

    b.  Additionally, and as further consideration under the Engagement Letter, the Debtors agree that no Indemnified Persons shall have

any liability to the Debtors or their respective owners, parents, affiliates, securityholders or creditors for Losses related to or arising out of or in connection with Jefferies' services under the Agreement, a Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, except to the extent that any such Losses incurred by the Debtors are determined by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted primarily from Jefferies' or any Indemnified Person's gross negligence or willful misconduct.

c. If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors, on the one hand, and the relative fault of Jefferies, on the other hand, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Engagement Letter. Relative benefits to the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring or any other transaction contemplated herein (or the total transaction value of any proposed Restructuring or any other transaction contemplated herein) to all fees actually received by Jefferies in connection with the Engagement Letter.

d. Promptly after receipt by any Indemnified Person of notice of his, her or its involvement in any action, proceeding or investigation, Jefferies shall, if a claim for indemnification in respect thereof is to be made against the Company under Schedule A of the Engagement Letter, notify the Debtors in writing of such involvement; provided, that the failure by Jefferies to promptly notify the Debtors shall only relieve the Debtors from their indemnification and contribution obligations hereunder to the extent the Debtors are prejudiced thereby.

e. If any action, proceeding or investigation is brought by a third party against any Indemnified Person, the Debtors shall be entitled to assume the defense of such action, proceeding or investigation

with counsel reasonably satisfactory to the Indemnified Person. Upon assumption by the Debtors of the defense of any such action, proceeding or investigation, the Indemnified Person shall have the right to participate in such action, proceeding or investigation and to retain its own counsel, but the Debtors shall not be liable for any legal expenses of such other counsel incurred by such Indemnified Person in connection with the defense thereof unless (i) the Debtors have agreed in writing to pay such fees and expenses, (ii) the Debtors shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner, (iii) the use of counsel chosen by the Debtors to represent the Indemnified Person would present such counsel with a conflict of interest ,or (iv) the Indemnified Person shall have been advised by counsel in writing that there are actual or potential conflicts of interest between the Debtors and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Debtors (in which case the Debtors shall not be entitled to assume the defense of such action, suit or investigation on behalf of such Indemnified Person).

f.  If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies or any other Indemnified Person, the Debtors will pay Jefferies (i) with respect to each day that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day that one of Jefferies' professional personnel is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action.

g.  The Debtors shall not settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party without such Indemnified Person's prior written consent (not to be unreasonably withheld) unless the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding. The Debtors shall not be obligated to indemnify any Indemnified Person for the amount of any settlement entered into by such Indemnified Person without the Debtors' prior written consent, which consent will not be unreasonably withheld.

    h.    The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.

30.    The Debtors believe the Indemnity Provision is a reasonable term and condition of the Jefferies engagement. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for financial advisors. Jefferies and the Debtors believe that the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

***Arbitration Provision***

31.    Pursuant to the Engagement Letter and subject to the terms and conditions set forth therein, Debtors and Jefferies further agreed to the following "Arbitration Provision":

> Any dispute, claim or controversy directly or indirectly relating to or arising out of the Engagement Letter, the termination or validity hereof, any alleged breach of the Engagement Letter or the engagement contemplated hereby (any of the foregoing, a "Claim") shall be submitted to JAMS, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the Debtors choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal

Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

32. The Debtors believe the Arbitration Provision is a reasonable term and condition of the engagement. An arbitration provision is a standard contract term for financial advisors and investment bankers. The Debtors believe that the Arbitration Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

33. The Debtors believe that the provisions set forth above are reasonable terms and conditions of the Jefferies engagement. Furthermore, subject to the additional provision regarding indemnity set forth herein, the Debtors and Jefferies negotiated the Fee Structure in contemplation that the provisions of the Engagement Letter would be approved by this Court in its entirety.

## Basis for Relief

34. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent to assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

35. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other

party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

36. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules and Local Rules to support entry of an order authorizing the Debtors to employ and retain Jefferies in these Chapter 11 Cases.

37. The Debtors believe that the employment of Jefferies would be in the best interests of the Debtors and their estates and desire to employ Jefferies, effective on the Petition Date, with compensation to be determined upon application to this Court. Were the Debtors required to engage a financial advisor other than Jefferies in connection with these proceedings, the Debtors, their estates and all parties in interest would be unduly prejudiced by the time and expense necessarily attendant to such counsel's familiarization with the intricacies of the Debtors' businesses and financial affairs.

## Notice

38. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Prepetition Agent; (d) counsel to the Prepetition Lenders; (e) counsel to the holders of the Subordinated Notes; and (f) the Internal Revenue Service. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

39. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order: (a) authorizing and approving the retention and employment by the Debtors of Jefferies as their financial advisor, effective as of the Petition Date; and (b) granting such other and further relief as this Court deems just and proper.

Dated: February 22, 2009
      Philadelphia, Pennsylvania

/s/ _____
BRIAN P. TIERNEY, CEO of Philadelphia Newspapers, LLC, PMH Acquisition, LLC, Broad Street Video, LLC, Philadelphia Direct, LLC, Philly Online, LLC, PMH Holdings, LLC, Broad Street Publishing, LLC and Philadelphia Media, LLC