## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| *Philadelphia Newspapers, LLC, et al.,* | ) | Case No. 09-11204 (SR) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | Related Docket Nos. 1079, 1123 |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO DIP LENDERS PURSUANT TO SECTION 364 OF BANKRUPTCY CODE, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, AND (IV) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF BANKRUPTCY CODE

Upon the motion (the "*Motion*") dated September 14, 2009 of Philadelphia Newspapers,

LLC ("*Debtor*" or "*Borrower*") and related debtors[1], as debtors and debtors in possession (each

individually, a "*Debtor*" and, collectively, the "*Debtors*" in the above captioned jointly

administered chapter 11 cases (collectively the "*Chapter 11 Cases*")), (a) for the entry of this

Final Order (the "*Final Order*") authorizing the Borrower to (i) obtain loans and advances and

obtain such other financial accommodations in an aggregate principal amount not to exceed

$15,000,000 (the "*DIP Facility*" or "*DIP Loans*") pursuant to sections 363 and 364 of title 11 of

the United States Code (the "*Bankruptcy Code*") and for all other Debtors, including, without

limitation, PMH Acquisition, LLC ("*Holdings*") and Philadelphia Media Holdings LLC

("*PMH*") and all subsidiaries of each of the foregoing (each individually a "*Guarantor*" and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: Philadelphia Media Holdings LLC (4680), PMH Acquisition, LLC (1299),
Broad Street Video, LLC (4665), Philadelphia Newspapers, LLC (3870), Philadelphia Direct, LLC (4439),
Philly Online, LLC (5185), PMH Holdings, LLC (1768), Broad Street Publishing, LLC (4574) and
Philadelphia Media, LLC (0657).

collectively, the "*Guarantors*") to guarantee the Borrower's obligations in connection with the

DIP Facility by entering into a senior secured superpriority debtor in possession credit agreement

(as the same may be amended, supplemented or otherwise modified from time to time, the "*DIP*

*Credit Agreement*"), substantially in the form annexed to the Motion as Exhibit A, among the

Debtors, Citizens Bank of Pennsylvania ("*Citizens*"), as administrative agent and collateral agent

(in such capacities, the "*Postpetition Agent*") and as co-syndication agent and lead arranger, and

Wells Fargo Foothill, Inc., as co-syndication agent, and certain lenders to be arranged by the

Postpetition Agent (collectively, with the Postpetition Agent, the "*DIP Lenders*"), (ii) execute

and enter into the DIP Credit Agreement and the agreements and instruments contemplated

thereby and to perform such other and further acts as may be required in connection with the DIP

Credit Agreement, (iii) grant priming liens and superpriority claims to the Postpetition Agent on

behalf of, and for the benefit of, the DIP Lenders in all assets of the Debtors (excluding causes of

action arising under chapter 5 of the Bankruptcy Code or property and interests recovered in

respect of any claims or causes of action arising under chapter 5 of the Bankruptcy Code) (as

used herein, the "*Postpetition Collateral*") in accordance with the Postpetition Financing

Documents (as defined herein), the Interim Order entered on September 21, 2009 (the "*Interim*

*Order*"), and this Final Order to secure any and all of the DIP Obligations (as defined herein),

and (iv) use Cash Collateral (as defined herein), (b) requesting modification of the automatic stay

imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors,

the Postpetition Agent, and the DIP Lenders to implement the terms of this Final Order, and (c)

requesting the provision of adequate protection to the prepetition secured creditors (the

"*Prepetition Lenders*") under or in connection with that certain Credit and Guaranty Agreement

dated as of June 29, 2006 (as amended, restated, supplemented, or otherwise modified from time

-2-

to time, the *"Prepetition Credit Agreement"*) by and among the Borrower, the other Debtors

with the exception of Philadelphia Media Holdings, LLC and Philadelphia Media, LLC (such

other Debtors and the Borrower, collectively, the *"Loan Parties"*), Citizens Bank of

Pennsylvania as agent for the Prepetition Lenders and as a Prepetition Lender (in such capacity,

together with in its capacity as collateral agent for the Prepetition Lenders, the *"Prepetition*

*Agent"*) and under or in connection with any and all security agreements, guaranty agreements,

subordination agreements, intercreditor agreements, deposit account control agreements, notes,

mortgages, pledges, instruments and any other agreements and documents delivered pursuant

thereto or in connection therewith, including, without limitation, the Loan Documents (as

defined in the Prepetition Credit Agreement), and all interest rate protection agreements and

other swap arrangements secured therewith (collectively, and as amended, restated,

supplemented or otherwise modified from time to time, the *"Prepetition Financing*

*Documents"*); and the Court having considered the Motion and the exhibits attached thereto,

including, without limitation, the DIP Credit Agreement; and the interim hearing having been

held and concluded on September 15, 2009 and final hearing having been held and concluded on

October 1, 2009 (the *"Final Hearing"*); and upon all of the pleadings filed with this Court (the

*"Court"*) or the *"Bankruptcy Court"*), all evidence presented in support of this Final Order, and

all of the proceedings held before the Court; and after due deliberation and consideration and

good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

      A.      On February 22, 2009 (the *"Petition Date"*), each of the Debtors other than PMH

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 10, 2009,

WM01/

PNL - Revised Final DIP Order (10-1)

PMH filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and is being jointly administered with the Chapter 11 Cases.

      B.      Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      C.      On March 2, 2009, the Office of the United States Trustee for the Eastern District of Pennsylvania (the "*U.S. Trustee*") appointed an Official Committee of Unsecured Creditors (the "*Committee*") in the Chapter 11 Cases.

      D.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      E.      Notice of the relief sought by the Motion and the Final Hearing was delivered via facsimile, electronic mail, and/or overnight delivery to the following: (i) the U.S. Trustee; (ii) counsel to the Committee, O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, Attn: Ben H. Logan and Times Square Tower, 7 Times Square, New York, New York 10036, Attn: Gerald C. Bender, and Eckert Seamans Cherin & Mellott, LLC, Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, PA 19102, Attn: Gary M. Schildhorn; (iii) all other parties with liens of record on assets of the Debtors as of the Petition Date; (iv) counsel to the Postpetition Agent and the Prepetition Agent, Drinker Biddle & Reath LLP, One Logan Square, 18th and Cherry Streets, Philadelphia, Pennsylvania 19103-6996, Attn: Andrew C. Kassner; and (v) counsel to that certain steering group of Prepetition Lenders (the

-4-

"*Steering Group*"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New

York 10036, Attn: Fred S. Hodara. Given the nature of the relief sought in the Motion, the

Court concludes that the foregoing notice was sufficient and adequate under the circumstances

and complies with Bankruptcy Rules 2002 and 4001 in all respects for purposes of entering this

Final Order.

F.      Subject to Paragraph 34 below, the Debtors acknowledge, admit and confirm the

following as of the Petition Date:

1.      Pursuant to the Prepetition Credit Agreement, the Prepetition Agent and

the Prepetition Lenders made certain loans, advances and other financial accommodations, and

provided for the issuance of letters of credit, to the Borrower and other Loan Parties.

2.      Pursuant to the Prepetition Credit Agreement and other Prepetition

Financing Documents, the Loan Parties were, as of the Petition Date, indebted to the Prepetition

Agent and the Prepetition Lenders for the aggregate principal and accrued interest of the

Prepetition Indebtedness (as defined herein) of not less than $318,763,725, plus accrued and

unpaid costs, fees and expenses, including fees and expenses of counsel and advisors for the

Prepetition Agent and the Prepetition Lenders.

3.      For purposes of this Final Order, the term "*Prepetition Indebtedness*"

shall mean and include, without duplication, any and all amounts owing or outstanding under the

Prepetition Credit Agreement (including, without limitation, all Obligations as defined in the

Prepetition Credit Agreement) or any other Prepetition Financing Document, including any swap

arrangements or interest rate protection agreements constituting Prepetition Financing

WM01/

PNL - Revised Final DIP Order (10-1)

Documents, interest on, fees and other costs, expenses and charges owing in respect of, such

amounts (including, without limitation, any attorneys', accountants', financial advisors' and

other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition Credit

Agreement, any other Prepetition Financing Document, or the terms of this Final Order), and any

and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit

or other Obligations outstanding thereunder.

4.    Pursuant to the Prepetition Financing Documents, the Loan Parties granted

first priority liens and continuing pledges and security interests in substantially all of their assets

(as used herein, the *"Prepetition Collateral"*) to and/or for the benefit of the Prepetition Agent

and Prepetition Lenders to secure the Prepetition Indebtedness and any guarantees thereof

(collectively, the *"Prepetition Liens"*).  For the avoidance of doubt, the term "Prepetition

Collateral" shall refer to (i) collateral in or upon which a lien or other security interest has been

granted in favor or for the benefit of the Prepetition Agent and the Prepetition Lenders in

connection with, pursuant to or under the Prepetition Credit Agreement or other Prepetition

Financing Documents, and (ii) any Prepetition Collateral provided under any Prepetition

Financing Documents, including that described in this subparagraph, that existed as of the

Petition Date, and subject to section 552 of the Bankruptcy Code, all prepetition and postpetition

proceeds, products, offspring, rents and profits of any such collateral.

5.    The Prepetition Financing Documents are valid and binding agreements

and obligations of the Loan Parties, and the Prepetition Liens (i) constitute valid, binding,

enforceable and perfected first priority security interests and liens, subject only to the Permitted

Liens (as defined in the Prepetition Credit Agreement), but only to the extent such Permitted

WM01/

PNL - Revised Final DIP Order (10-1)

Liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to

the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of

the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment

or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which

are senior in priority to the Prepetition Liens under applicable law and after giving effect to any

applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance,

reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or

applicable non-bankruptcy law.

6.      The Prepetition Indebtedness constitutes the legal, valid and binding

obligation of the Loan Parties, enforceable in accordance with its terms; no objection, offset,

defense or counterclaim of any kind or nature to the Prepetition Indebtedness exists, and the

Debtors shall not assert any claim, counterclaim, setoff or defense of any kind, nature or

description that would in any way affect the validity, enforceability and non-avoidability of any

of the Prepetition Indebtedness; and the Prepetition Indebtedness and any amounts previously

paid to the Prepetition Agent or any Prepetition Lender on account thereof or with respect

thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination

pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

7.      The Prepetition Agent (on its behalf and on behalf of the Prepetition

Lenders) holds properly perfected Prepetition Liens in and on the Prepetition Collateral by the

filing of UCC-1 financing statements, mortgages and other required documents against the Loan

Parties and such Prepetition Collateral with the proper state and county offices for the perfection

of such Prepetition Liens.

WM01/

PNL - Revised Final DIP Order (10-1)

8.      Subject to the time limitations specified in Paragraph 34 below, none of the foregoing acknowledgments or agreements by the Debtors contained in this Paragraph shall be binding on the Debtors' estates, the Committee or any other party (other than the Debtors) and shall not affect or limit the rights of the Committee with respect to their rights to assert, pursue or otherwise allege any of the Claims and Defenses (as defined herein) against the Prepetition Agent and the Prepetition Lenders in accordance with and subject to the terms of this Final Order.

G.      An immediate and critical need exists for the Debtors to obtain funds and use cash collateral to continue the operation of their businesses. However, the use of "cash collateral," as defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral ("*Cash Collateral*"), alone would be insufficient to meet the Debtors' immediate postpetition liquidity needs. The Debtors are unable to obtain the required funds (i) in the forms of (w) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (y) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code or (z) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the DIP Lenders under the DIP Credit Agreement, this Final Order and all other agreements, documents, notes and instruments executed and delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the fee letter executed by the Postpetition Agent, the Budget (as defined in the DIP Credit Agreement) attached to the DIP Credit Agreement as Exhibit E, the Pledge and Security Agreement (as defined in the DIP Credit Agreement), and the Notes (as defined in the DIP

-8-

Credit Agreement) (collectively with the DIP Credit Agreement, the Interim Order and this Final

Order, the "*Postpetition Financing Documents*"). The Prepetition Lenders are willing to

authorize the Debtors' use of the Prepetition Lenders' Cash Collateral only if the Debtors agree

to, and the Court approves, the terms of the DIP Credit Agreement and this Final Order.

   H.  The Debtors have requested that, pursuant to the terms of the Postpetition

Financing Documents, the DIP Lenders make loans and advances and provide other financial

accommodations to the Debtors, and that the Prepetition Lenders consent to the use of their Cash

Collateral, to be used by the Debtors solely in accordance with the terms of the Postpetition

Financing Documents. The ability of the Debtors to continue their businesses and reorganize

under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing

and using such Cash Collateral. The Debtors will suffer immediate and irreparable harm if the

requested postpetition financing is not available on a final basis. The DIP Lenders are willing to

extend the DIP Facility on a superpriority and first priority secured basis, as more particularly

described herein, pursuant to the terms and conditions of the Postpetition Financing Documents.

The Debtors' entry into the Postpetition Financing Documents is fair and reasonable and is a

sound, prudent exercise of their business judgment consistent with their fiduciary duties. The

Postpetition Financing Documents were negotiated at arm's length and in good faith between the

Debtors, the Postpetition Agent, and the DIP Lenders and the loans and extensions of credit

provided for in the Postpetition Financing Documents constitute reasonably equivalent value and

fair consideration. Accordingly, the relief requested in the Motion is necessary, essential and

appropriate for the continued operation of the Debtors' businesses, the management and

preservation of their assets and properties, and the avoidance of irreparable harm to the Debtors,

-9-

the operation of their business and the Debtors' estates and is in the best interests of the Debtors,

their estates and creditors.

I.    The DIP Credit Agreement provides for various Events of Default (as defined

therein), including, without limitation, failure to make payments when due; non-compliance with

covenants; breach of representations and warranties; default in other agreements relating to post-

petition indebtedness; impairment of the Postpetition Financing Documents or security; the entry

of judgments or attachments against any Credit Party (as defined in the DIP Credit Agreement);

cessation of the business; change of control; dismissal of any of the Chapter 11 Cases or

conversion of any of the Chapter 11 Cases to a chapter 7 case; appointment of a chapter 11

trustee; appointment of a responsible officer or examiner with enlarged powers relating to the

operation of the business of the Borrower or any Guarantor; granting of relief from the automatic

stay; filing of a motion requesting, or the entry of an order granting any super-priority claim

which is senior or *pari passu* with the DIP Lenders' claims or the claims of the Prepetition

Lenders under the Prepetition Financing Documents; entry of an order without the prior consent

of the Requisite Lenders (as defined in the DIP Credit Agreement) amending, supplementing or

otherwise modifying this Final Order; obtaining or seeking additional financing or granting liens

not permitted under the DIP Credit Agreement or using cash collateral without the consent of

Postpetition Agent or Requisite Lenders, or seeking to subordinate DIP Obligations (as defined

in Ordered paragraph 2 herein) or related liens; reversal, vacation or stay of the effectiveness of

this Final Order; payment with respect to prepetition debt (other than as approved by the Post-

Petition Agent, Requisite Lenders and the Bankruptcy Court); cessation of liens or super-priority

claims granted with respect to the DIP Facility to be valid, perfected and enforceable in all

WM01/

PNL - Revised Final DIP Order (10-1)

respects; any adverse effect on revenues as a result of any strike, lockout, or labor dispute; and any default under any order of the Bankruptcy Court authorizing the use of cash collateral.

J.       The DIP Credit Agreement provides that the maturity date (the "*Final Maturity Date*") shall be the earliest of the following: (a) six (6) months from the date of the DIP Credit Agreement, (b) the earlier of (x) the date upon which the Interim Order expires or (y) thirty (30) days after the entry of the Interim Order, in either case, if the Final Order has not been entered prior to the expiration of such period, (c) if a plan of reorganization has been confirmed by order of the Bankruptcy Court in these Chapter 11 Cases, the earlier of (x) the effective date of such plan of reorganization or (y) the 30th day after the date of entry of the confirmation order, (d) the closing of a sale of substantially all of the equity or assets of the Borrower or any Guarantor, (e) the date of indefeasible payment in full by Borrower of all Obligations under the DIP Facility in accordance with the terms hereof and thereof, or (g) upon acceleration of the DIP Loans.

K.       Based on the record before the Court, (i) the terms of the use of the Prepetition Lenders' Cash Collateral as provided in this Final Order and (ii) the terms of the Postpetition Financing Documents, pursuant to which the DIP Loans, advances and other credit and financial accommodations will be made or provided to the Debtors by the DIP Lenders, in each case have been negotiated at arm's length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The DIP Lenders are extending the DIP Facility to the Debtors, and the Prepetition Agent and Prepetition Lenders are permitting the use of their Cash Collateral, in good faith, and the Postpetition Agents and the DIP Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

WM01/

*PNL - Revised Final DIP Order (10-1)*

L.      It is in the best interests of the Debtors' estates that they be allowed to finance

their operations and use Cash Collateral under the terms and conditions set forth herein and in

the Postpetition Financing Documents. The relief requested by the Motion is necessary to avoid

immediate and irreparable harm to the Debtors' estates, and good, adequate and sufficient cause

has been shown to justify the granting of the relief requested herein, and the entry of this Final

Order.

M.      The Prepetition Agent and the Prepetition Lenders are prepared to consent to the

Debtors' use of the Prepetition Lenders' Cash Collateral and the granting of the Postpetition

Liens (as defined herein) in the Prepetition Collateral solely on the terms and conditions set forth

in this Final Order, including the approval and payment of the Prepetition Lender Fees (as

defined herein) and the granting of the Adequate Protection Liens (as defined herein), and the

DIP Credit Agreement. The adequate protection provided herein to the Prepetition Agent and

the Prepetition Lenders and other benefits and privileges contained herein are consistent with and

authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of

such parties.

N.      The consent of the Prepetition Agent and the Prepetition Lenders to the priming

of their Prepetition Liens by the Postpetition Liens (as defined herein) is limited to such priming

occurring pursuant to the Postpetition Financing Documents, with the Postpetition Agent and the

DIP Lenders, and shall not extend to any other postpetition financing or to any modified version

of the Postpetition Financing Documents except as provided in the ordered Paragraph 2 below

(except to the extent modified in this Final Order and only to the extent any such modification is

-12-

consistent with a consent given by the Prepetition Agent and the requisite lenders as defined in

the Prepetition Credit Agreement).

O.      The Postpetition Liens (as defined herein) granted pursuant to this Final Order to

the Postpetition Agent, for the benefit of itself and the DIP Lenders, are appropriate under

section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests

and liens do not impair the interests of any holder of a valid, perfected, prepetition security

interest or lien in the property of the Debtors' estates, and/or (ii) the holders of such valid,

perfected, prepetition security interests and liens have consented to the security interests and

priming liens granted pursuant to this Final Order to the Postpetition Agent for the benefit of

itself and the DIP Lenders.

P.      Good cause has been shown for the entry of this Final Order pursuant to

Bankruptcy Rules 4001(b) and (c).  In particular, the permission granted herein for the Debtors

to execute the Postpetition Financing Documents, to use Cash Collateral, and to obtain financing,

including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the

Debtors and their estates.  Entry of this Final Order is in the best interest of the Debtors, their

estates and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1.      **Motion Granted.**  The Motion is granted on the terms and conditions set forth

herein.  Any objections to the relief sought in the Motion that have not been previously resolved

or withdrawn are hereby overruled on their merits.  This Final Order shall become effective

immediately upon its entry.  To the extent the terms of the other Postpetition Financing

-13-

Documents differ in any material respect from the terms of this Final Order, this Final Order

shall control.

2.    **DIP Credit Agreement.** The Debtors are hereby (i) authorized to enter into the

DIP Credit Agreement, substantially in the form filed with the Court as Exhibit A to the Motion,

and the other Postpetition Financing Documents, and (ii) authorized to borrow up to the

aggregate principal amount of $15,000,000, incur debt, reimbursement obligations and other

obligations, grant liens or interests, make deposits, provide guaranties and indemnities and

otherwise perform their obligations, all in accordance with the terms and conditions of the

Postpetition Financing Documents. The Postpetition Financing Documents may be amended,

modified, supplemented or the provisions thereof waived in accordance with their terms, without

further order of this Court or notice to any party; *provided, however,* that the Debtors shall

provide notice of any such amendment, modification, supplement or waiver to the U.S. Trustee,

counsel to the Committee, counsel to the Prepetition Agent and counsel to the Steering Group,

each of which shall have five (5) days from the date of such notice within which to object in

writing to such amendment, modification, supplement, or waiver, and upon any such timely

written objection, such amendment, modification, supplement, or waiver shall only be permitted

pursuant to an order of this Court. All obligations owed to any of the Postpetition Agent and/or

DIP Lenders (collectively, the "***Postpetition Secured Parties***") under, or in connection with, the

Postpetition Financing Documents, including, without limitation, all Obligations (as defined in

the DIP Credit Agreement), loans, advances, letters of credit and other indebtedness, obligations

and amounts (contingent or otherwise) owing from time to time under or in connection with the

Postpetition Financing Documents, and any and all other obligations at any time incurred by any

-14-

of the Debtors to any of the Postpetition Secured Parties, are defined and referred to herein as the
*"DIP Obligations."*

3.      **Conditions Precedent.** The DIP Lenders shall have no obligation to lend under
the DIP Credit Agreement unless and until the conditions set forth in the DIP Credit Agreement
have been satisfied or waived in accordance with the DIP Credit Agreement.

4.      **Use of Cash Collateral.** Subject to the terms and conditions set forth in this Final
Order, the Postpetition Financing Documents and in accordance with the Budget (provided,
however, that the Debtors may exceed any line item in the Budget, so long as the aggregate
amount of the variance from the Budget for any week on a rolling net basis is not exceeded by
more than ten percent (10%); and, provided further, however, that the Debtors shall be in default
under the Budget if the cash reflected on the "Ending Available" line for any actual week ending
on a Sunday is less than $2,000,000) the Debtors are authorized, pursuant to section 363(c)(2)(B)
of the Bankruptcy Code, to use the Prepetition Lenders' Cash Collateral for the period of time
from the date hereof until the occurrence of any one of the following: (i) the Final Maturity Date,
(ii) the determination by the Postpetition Agent to terminate the DIP Facility following the
occurrence of an Event of Default (as defined in the DIP Credit Agreement), (iii) the date on
which this Final Order is no longer in full force and effect, (iv) the date on which any Cash
Collateral is expended in violation of the provisions of this Final Order, the Budget, or the terms
of the DIP Credit Agreement, (v) the date on which any of the Chapter 11 Cases is dismissed or
converted to a case under chapter 7 of the Bankruptcy Code, (vi) the date on which a trustee or
examiner with expanded powers is appointed in any of the Chapter 11 Cases unless otherwise
agreed to by the Postpetition Agent and Requisite Lenders, or (vii) the date on which any Debtor

-15-

fails to make any payments to the Prepetition Lenders when due in accordance with this Final
Order.

5.    **Authorization to Borrow.**  Subject to the terms and conditions of this Final
Order, the Postpetition Financing Documents and in accordance with the Budget, the Debtors are
authorized to request extensions of credit under the DIP Facility.

6.    **Binding Effect.**  Upon execution and delivery of the Postpetition Financing
Documents, the Postpetition Financing Documents shall constitute valid and binding obligations
of the Debtors, enforceable against the Debtors in accordance with their terms.  No obligation,
payment, transfer or grant of security under this Final Order or the other Postpetition Financing
Documents shall be stayed, restrained, voided or recovered under the Bankruptcy Code or any
applicable nonbankruptcy law, or subjected to any defense, reduction, setoff, recoupment or
counterclaim.

7.    **Use of Lender Funds.**  The Debtors may use Cash Collateral and the loans or
advances made under, or in connection with, the Postpetition Financing Documents solely as
provided in this Final Order and in the other Postpetition Financing Documents.  From and after
the Petition Date, amounts loaned and advanced under, or in connection with, the Postpetition
Financing Documents and all proceeds of the Postpetition Collateral and Prepetition Collateral,
including, without limitation, all of the Debtors' existing or future cash and Cash Collateral
(collectively, "*Lender Funds*"), shall not, directly or indirectly, be used to pay expenses of the
Debtors or otherwise disbursed except (a) to fund working capital requirements of the Borrower
and Guarantors (other than Holdings and PMH), operating expenses of the Borrower and
Guarantors (other than Holdings and PMH), capital expenditures and other line items in

-16-

WM01/

PNL - Revised Final DIP Order (10-1)

accordance with the terms of the Budget, including fees and expenses of attorneys and financial

advisors or other consultants of the Debtors and the Committee duly retained pursuant to sections

327 and 1103 of the Bankruptcy Code (including, without limitation, a claims and noticing

agent), which have been allowed by the Court, but only to the extent such fees and expenses are

provided in the Budget during the administration of the Chapter 11 Cases (the "*Professional

Fees*") subject to ordered Paragraphs 8 and 9 below; (b) to fund the payment of interest accrued

on the DIP Loans; (c) to pay all fees and expenses of the Postpetition Agent and such other fees

as are provided in the Fee Letter (as defined in the Postpetition Financing Documents) related to

the DIP Facility and the Chapter 11 Cases, including, without limitation, due diligence expenses,

attorneys' fees, and fees of professional advisors; (d) to pay all outstanding fees and expenses,

including reasonable attorneys' fees, which shall be paid by the Debtors directly to the respective

attorneys and not the Prepetition Agent on their behalf, of the Prepetition Lenders and the

Prepetition Agent related to the Chapter 11 Cases, subject to the limitations set forth in ordered

Paragraph 9 below; (e) to pay all outstanding fees and expenses, including reasonable attorneys'

fees, related to the Chapter 11 Cases, of the Prepetition Lenders and the Prepetition Agent

provided for in the Pre-Petition Credit Documents, subject to the limitations set forth in ordered

Paragraph 9 below; and (f) to pay any and all subsequent Prepetition Lender Fees (as defined

herein) as they are invoiced within fifteen (15) days after receipt of an invoice for such

Prepetition Lender Fees; *provided, however*, that the foregoing shall not be construed as consent

to the allowance of any of the Professional Fees referred to in clause 7(a) above and shall not

affect the right of any party in interest to object to the allowance and payment of any such fees

and expenses of professionals.

WM01/

PNL - Revised Final DIP Order (10-1)

8.    **Limitation on Use of Lender Funds.** No Lender Funds or the Carve-Out (as

defined herein) shall be transferred to, or used by, any entity other than Borrower for itself or

Guarantors (excluding Holdings and PMH), except as may be permitted by the Postpetition

Agent and Requisite Lenders or as set forth in the Budget. No Lender Funds or the Carve-Out

shall be used to pay: (a) salaries or bonuses to the Publisher and Chief Executive Officer, the

Executive Vice President, Finance, and the Executive Vice President of Production, Labor, and

Purchasing of PMH, Borrower, or any Guarantor, beyond or above the salary amounts that were

in place prior to December 2008; (b) expenses of any of the foregoing beyond and above the

expenses reimbursable as of December 28, 2008; (c) the Debtors' advisory board; (d) any fees or

expenses in connection with any proposed debtor-in-possession financing facility other than the

DIP Credit Agreement; or (e) outside costs and expenses of the "Keep It Local" campaign or

other public relations campaigns relating to the Chapter 11 Plan (collectively, the "*Publicity*

*Campaign*"), including, (x) placement of advertisements in any publication not owned by the

Debtors, and (y) on-line advertising on any website not owned by the Debtors. Except as

provided in Paragraph 34 below, no Lender Funds or the Carve-Out (as defined below) shall be

used directly or indirectly by any of the Debtors, the Committee, or any other person or entity

(i) to object to or contest in any manner the DIP Obligations, the Postpetition Liens securing the

DIP Obligations, the Prepetition Indebtedness, the Prepetition Liens securing the Prepetition

Indebtedness, or Adequate Protection Liens granted to the Prepetition Agent hereunder (ii) to

assert or prosecute any actions, claims or causes of action (including, without limitation, any

claims or causes of action under Chapter 5 of the Bankruptcy Code) or make any complaint,

motion, application, pleading, plan, objection, or other filing against any of the Postpetition

Secured Parties, Prepetition Lenders or the Prepetition Agent or their respective advisors or

-18-

professionals, (iii) to seek authorization for any party to use any of the Cash Collateral of the

Postpetition Secured Parties without the consent of the Postpetition Agent and the DIP Lenders,

(iv) to seek or obtain liens or security interests that are senior to, or on a parity with, the

Postpetition Liens of the Postpetition Agent, the DIP Lenders, the Postpetition Secured Parties,

or the Prepetition Agent in the Postpetition Collateral or the Prepetition Collateral, as applicable,

or any portion thereof, (v) to make any distributions under a plan in the Chapter 11 Cases, (vi) to

object to or contest in any manner a chapter 11 plan of reorganization proposed or supported by

any of the Postpetition Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders,

or (vii) in any other manner prohibited or not expressly permitted by the Postpetition Financing

Documents, *provided, however*, that nothing in this Paragraph 8 shall prohibit the Debtors from

requesting permission from the Bankruptcy Court to use Cash Collateral for the purposes of

objecting to a plan of reorganization proposed or supported by any of the Postpetition Agent, the

DIP Lenders, the Prepetition Agent, or the Prepetition Lenders at such time as proposed, and

provided further than nothing contained herein shall prohibit the Postpetition Agent, the DIP

Lenders, the Prepetition Agent, or the Prepetition Lenders from filing any objections with the

Bankruptcy Court to the Debtors' request for such use of the Cash Collateral.

9.    **Exception to Limitation on Lender Funds.**  Notwithstanding Paragraph 8

above, Lender Funds may be used by (a) the Debtors and their counsel, experts and advisors, to

propose, solicit in an authorized manner support for, and prosecute and litigate the confirmation

of the Debtors' Joint Chapter 11 Plan as of August 20, 2009 (Docket No. 947) (the "*Chapter 11

Plan*") not to exceed the amount of $250,000 (the "*Debtors' Plan Expenses*") (expressly

excluding flat monthly fees of Sonenshine Partners LLC pursuant to prior orders of the

Bankruptcy Court and fees and expenses directly related to the Debtors' proposed sale of

-19-

substantially all of their assets to Philly Newspapers, LLC pursuant to the Chapter 11 Plan (the

"*Sale*") and the Sale process, including approval of bidding procedures, responding to due

diligence requests, reviewing, meeting, and negotiating with potential bidders, or otherwise

taking actions in furtherance of the bidding procedures, and any auction) and (b) the Prepetition

Agent, Steering Group and their respective counsel, experts and advisors to object to or contest

confirmation of the Chapter 11 Plan (the "*Creditors' Plan Expenses*") not to exceed the amount

of $250,000 (other than flat monthly fees of The Blackstone Group and expenses directly related

to the Sale and Sale process, including, without limitation, bidding procedures, preparation and

negotiation of an asset purchase agreement, formation and governance documents and structure

of one or more entities for purposes of bidding related to the Sale, due diligence related to the

Sale and any auction) and the Committee, its counsel, experts and advisors related to

confirmation of the Chapter 11 Plan process (the "*Committee's Plan Expenses*") not to exceed

the amount of $250,000 (other than fees and expenses directly related to the Sale and Sale

process).

     10.    **Additional Agreements.**  In addition to complying with all provisions of the

Postpetition Financing Documents relating to the establishment and maintenance of controlled

securities accounts, deposit accounts, and cash collateral accounts, the Debtors are hereby

authorized and directed to enter into any additional agreements providing for the establishment

of lockboxes, blocked accounts or similar arrangements requested by the Postpetition Agent (or

other banks or financial institutions acceptable to the Postpetition Agent) for the benefit and in

favor of the Postpetition Secured Parties for purposes of facilitating cash collections from the

Debtors in accordance with the terms of the Postpetition Financing Documents.

WM01/

PNL - Revised Final DIP Order (10-1)

11.    **Sections 506(c) and 552(b).** Upon entry of this Final Order, (i) the DIP Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lenders or Prepetition Lenders with respect to proceeds, products, offspring or profits of any of the Postpetition Collateral or the Prepetition Collateral, and (ii) no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Postpetition Collateral or the Prepetition Collateral, the Prepetition Agent, the Prepetition Lenders, the Postpetition Agent or the DIP Lenders, or any of their respective claims pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the Prepetition Agent, the Prepetition Lenders, the Postpetition Agent or the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

12.    **Interest.** Interest on the DIP Obligations shall be secured in the manner specified herein, and shall accrue at the rates (including any default rates) and be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

13.    **Fees.** Any and all fees paid or required to be paid to the DIP Lenders and Postpetition Agent and their respective counsel in connection with the Postpetition Financing Documents are hereby authorized and shall be paid in accordance with the terms and provisions of this Final Order and, to the extent not inconsistent with this Final Order, the Postpetition Financing Documents.

14.    **Priority of DIP Obligations.** All DIP Obligations (subject only to the Carve-Out (as defined herein)) hereby constitute, under section 364(c)(1) of the Bankruptcy Code, allowed

-21-

WM01/

PNL - Revised Final DIP Order (10-1)

superpriority administrative expense claims (the "*Superpriority Claims*") against each of the

Debtors (jointly and severally) having priority over all administrative expenses of the kind

specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without

limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 365, 503(b),

507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in

the Chapter 11 Cases or following any conversion thereof to a case under chapter 7 of the

Bankruptcy Code or any other proceeding related hereto or thereto), which Superpriority Claims

shall, subject to the Carve-Out, be payable from and have recourse to all prepetition and

postpetition property of the Debtors and all proceeds thereof (excluding any avoidance actions

under chapter 5 of the Bankruptcy Code or the proceeds of any avoidance claims under chapter 5

of the Bankruptcy Code).

15.    **Postpetition Liens.**  As security for the DIP Obligations, the Postpetition Agent is

hereby granted for the sole benefit of the Postpetition Secured Parties valid, binding, enforceable,

first priority and perfected liens on and security interests (the "*Postpetition Liens*") in the

Postpetition Collateral (excluding any avoidance actions under chapter 5 of the Bankruptcy Code

or the proceeds of any avoidance claims under chapter 5 of the Bankruptcy Code) and the

Prepetition Collateral.  The Postpetition Liens (A) shall constitute first priority liens in and to all

Postpetition Collateral and Prepetition Collateral that is not otherwise subject to any valid,

perfected, enforceable and non-avoidable lien in existence as of the Petition Date, pursuant to

section 364(c)(2) of the Bankruptcy Code; (B) shall (y) be senior to and prime the Prepetition

Liens and any Liens junior to such Prepetition Liens, and (z) be senior to and prime all Adequate

Protection Liens (as defined herein) ((y) and (z) above, collectively, the "*Primed Liens*")

pursuant to section 364(d)(1) of the Bankruptcy Code; and (C) shall be immediately junior in

-22-

priority to any and all valid, perfected, enforceable and non-avoidable Liens (other than the

Primed Liens) on assets of the Debtors in existence as of the Petition Date with priority over the

Prepetition Liens and the Prepetition Lenders where such Prepetition Liens were properly

perfected prior to the Petition Date or for which perfection relates back under section 546(b) of

the Bankruptcy Code (collectively, the *"Non-Primed Liens"*), pursuant to section 364(c)(3) of

the Bankruptcy Code.

16.    **Additional Documents.**  The Debtors shall execute and deliver to the Postpetition

Secured Parties or Prepetition Agent all such agreements, financing statements, instruments and

other documents as the Postpetition Agent, Prepetition Agent or any of the DIP Lenders may

reasonably request to evidence, confirm, validate or perfect the Postpetition Liens and Adequate

Protection Liens granted pursuant hereto.

17.    **Liens Valid.**  This Final Order shall be sufficient and conclusive evidence of the

validity, perfection and priority of all liens granted herein including the Postpetition Liens and

the Adequate Protection Liens without the necessity of filing or recording any financing

statement, mortgage, notice, or other instrument or document which otherwise would be required

under law or regulation of any jurisdiction or the taking of any other action (including, for

avoidance of doubt, entering into any deposit account control agreement) to validate or perfect

(in accordance with non-bankruptcy law) as of the Petition Date, the Postpetition Liens and the

Adequate Protection Liens, or entitle the Postpetition Agent, the DIP Lenders, the Prepetition

Agent and the Prepetition Lenders to the priorities granted herein.  Notwithstanding the

foregoing, the Postpetition Agent and the Prepetition Agent each are authorized to file, as each in

its sole discretion deems necessary, such mortgages, financing statements, notices of liens and

-23-

other similar instruments and documents in accordance with applicable non-bankruptcy law or to

otherwise evidence any of the Postpetition Liens or Adequate Protection Liens, and all such

mortgages, financing statements, notices of liens or other similar instruments and documents

shall be deemed to have been executed, filed and/or recorded at the time and on the date of the

Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required

to create or perfect the Postpetition Liens or the Adequate Protection Liens. The Debtors are

authorized and directed to execute and deliver promptly to the Postpetition Agent or the

Prepetition Agent all such mortgages, financing statements, notices of liens or other similar

instruments and documents as such Postpetition Agent or Prepetition Agent may reasonably

request. Each and every federal, state and local government agency or department may accept

the entry by this Court of this Final Order or any other related order as evidence of the validity,

enforceability and perfection on the Petition Date of the Postpetition Liens and Adequate

Protection Liens granted herein.

18.    **Priority of Liens.** The Postpetition Liens shall not be (i) subject to any lien or

interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of

the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or interest

under section 364(d) of the Bankruptcy Code or otherwise. As provided by the DIP Credit

Agreement, an Event of Default shall occur if any claim, lien or interest (other than Non-Primed

Liens) having a priority superior to or *pari passu* with those granted by this Final Order with

respect to the DIP Obligations shall be granted or allowed prior to the indefeasible payment in

full in cash and satisfaction in the manner provided in the Postpetition Financing Documents of

the DIP Obligations.

-24-

19.    **Priority to Adequate Protection Liens.** The Postpetition Liens and the

Superpriority Claims granted to the Postpetition Secured Parties hereunder and under the other

Postpetition Financing Documents are and shall be at all times senior and prior in all respects to

the Adequate Protection Liens (as defined herein) and Adequate Protection Claims (as defined

herein), all Prepetition Liens securing any Prepetition Indebtedness, in all cases, whether granted

under this Final Order, the Prepetition Financing Documents, or otherwise, and any other

obligations in respect of adequate protection and all other claims held by the Prepetition Agent

and Prepetition Lenders (including, without limitation any superpriority claims), in each case,

whether arising under or related to the Prepetition Financing Documents, this Final Order or

otherwise.

20.    **Survival.** The provisions of this Final Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

reorganization in any of the Chapter 11 Cases (and pursuant to section 1141(d) of the

Bankruptcy Code, the Debtors hereby waive such discharge); (b) converting any of the Chapter

11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11

Cases or any Successor Cases (as defined herein); or (d) pursuant to which this Court abstains

from hearing any of the Chapter 11 Cases or any Successor Cases, provided however that

Superpriority Claims or other administrative expenses shall survive only to the extent permitted

by applicable law.  The terms and provisions of this Final Order, including the claims, liens,

security interests and other protections granted to the Postpetition Agent, DIP Lenders,

Prepetition Agent and Prepetition Lenders pursuant to this Final Order and/or the Postpetition

Financing Documents, notwithstanding the entry of any such order, shall continue in the Chapter

11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any

-25-

Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP

Obligations have been indefeasibly paid in full in cash and all commitments to extend credit

under the DIP Facility are terminated. The terms and provisions concerning the indemnification

of the Postpetition Agent and/or DIP Lenders shall continue in the Chapter 11 Cases, in any

Successor Cases, following dismissal or conversion of the Chapter 11 Cases or any Successor

Cases, following termination of the Postpetition Financing Documents and/or the repayment of

the DIP Obligations.

21.    **Carve-Out.** The claims granted hereunder to the Prepetition Lenders, the

Adequate Protection Liens, the Prepetition Liens, the Postpetition Secured Parties, the

Postpetition Liens and any claims, security interests or liens ranking *pari passu* with or junior in

priority to such claims of the Prepetition Lenders, the Adequate Protection Liens, the Prepetition

Liens, the Postpetition Secured Parties and the Postpetition Liens shall be subject to payment of

the Carve-Out. As used in this Final Order, *"Carve-Out"* means the sum of (i) all fees required

to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. §

1930, *plus* (ii) allowed and unpaid reasonable fees and expenses of attorneys and financial

advisors employed pursuant to sections 327 and 1103 of the Bankruptcy Code by the Debtors

and the Committee (collectively, the *"Case Professionals"*) incurred prior to the earliest of (a) an

Event of Default (as defined DIP Credit Agreement), (b) the termination of the DIP Facility, or

(c) the maturity date of the DIP Facility (the earliest, the *"Carve-Out Date"*), *plus* (iii) $250,000

for payment of such fees and expenses incurred after the Carve-Out Date. Prior to the Carve-Out

Date, subject to entry of an appropriate order of the Bankruptcy Court (in form and substance

reasonably acceptable to the Postpetition Agent), the Debtors shall be permitted to use Cash

Collateral and/or proceeds of the DIP Loans to pay compensation and reimbursement of

-26-

budgeted expenses allowed and payable to Case Professionals under sections 330 and 331 of the

Bankruptcy Code in accordance with the Budget, and the Carve-Out shall not be reduced by the

amount of any compensation or reimbursement of costs and expenses accrued, incurred, awarded

and paid prior to the occurrence of the Carve-Out Date; *provided, further,* that notwithstanding

the foregoing, following the Carve-Out Date, any amounts paid to Case Professionals from any

source will reduce the Carve-Out on a dollar-for-dollar basis; and *provided, further*, that nothing

herein shall be construed to impair the ability of any party to object to any of the fees, expenses,

reimbursement, or compensation sought by the professionals.   The Postpetition Agent shall be

entitled to maintain reserves against borrowing availability on account of the Carve-Out as more

fully provided in the DIP Credit Agreement.

22.    **Limitation on Use of Carve-Out.**  No Lender Funds or the Carve-Out may be

used to challenge the amount, validity, perfection, priority or enforceability of, or assert any

defense, counterclaim or offset to the DIP Credit Agreement or the claims, security interests and

liens of the Postpetition Agent and DIP Lenders with respect thereto or otherwise to assert any

claim, cause of action, objection, or litigate (including, without limitation, commencing

adversary proceedings, motions, contested matters, arbitrations, mediations, or other similar

proceedings), against any of the DIP Lenders or Postpetition Agent or to challenge any payment

of transfer to the DIP Lenders or Postpetition Agent.

23.    **Proceeds of Subsequent Financing or Sale.**  If at any time prior to the

repayment in full of all obligations arising under the DIP Credit Agreement, including

subsequent to the confirmation of any plan in the Chapter 11 Cases, any of the Debtors, any

trustee, any examiner with expanded powers or any responsible officer subsequently appointed,

WM01/

PNL - Revised Final DIP Order (10-1)

shall obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy

Code in violation of the terms of this Final Order or shall receive proceeds from a sale of any

Postpetition Collateral or Prepetition Collateral pursuant to section 363(b) of the Bankruptcy

Code, then, subject to the Carve-Out, all of the cash proceeds derived from such credit, debt, or

sale shall immediately be turned over to the Postpetition Agent to be applied first to satisfy all

costs and expenses of the Postpetition Agent and then the other DIP Obligations in the manner

set forth in the Postpetition Financing Documents. Any remaining net cash proceeds will be

applied to repay the Prepetition Indebtedness in accordance with the provisions of the Prepetition

Credit Agreement. The DIP Facility amount will be reduced, permanently and on a dollar-for-

dollar basis, by the amount of net cash proceeds applied to prepay the DIP Loans.

24.    **Prepetition Lender and Postpetition Lender Rights.** The entry of this Final

Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or

otherwise impair (a) any of the rights of any of the DIP Lenders, Postpetition Agent, Prepetition

Agent, or Prepetition Lenders under the Bankruptcy Code or under any non-bankruptcy law,

including, without limitation, the right of any of the DIP Lenders, Postpetition Agent, Prepetition

Agent, or Prepetition Lenders to (i) request modification of the automatic stay of section 362 of

the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of

the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy Code, or appointment

of a chapter 11 trustee or examiner (including with expanded powers), or (iii) propose, subject to

the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, or (b) any

other rights, claims or privileges (whether legal, equitable or otherwise) of any of the

Postpetition Secured Parties or the Prepetition Lenders.

-28-

25.    **No Waiver.** This Final Order is without prejudice to, and does not constitute a

waiver of, expressly or implicitly, the rights of the Prepetition Agent to seek additional adequate

protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code at any time.

Nothing in this Final Order amends, modifies, terminates or waives any provision of the

Prepetition Financing Documents. Without limiting the generality of the foregoing, nothing in

this Final Order shall be deemed to waive, reduce, or postpone the time for, any payment under

the Prepetition Financing Documents.

26.    **Maturity.** Notwithstanding any provision of this Order or in any of the

Postpetition Financing Documents, on the Final Maturity Date, (i) the Debtors shall no longer be

authorized to borrow funds or incur indebtedness under the Postpetition Financing Documents or

this Final Order or to use any of the DIP Loans already received, or the Cash Collateral, and (ii)

any obligations of the DIP Lenders to make loans or advances or issue letters of credit hereunder

or under the other Postpetition Financing Documents automatically shall be terminated.

27.    **Survival After Maturity.** Notwithstanding anything herein or the occurrence of

the Final Maturity Date, all of the rights, remedies, benefits and protections provided (i) to the

Postpetition Secured Parties under this Final Order and the Postpetition Financing Documents

and (ii) to the Prepetition Agent and Prepetition Lenders under this Final Order, shall survive

such Final Maturity Date. Upon such Final Maturity Date, the principal of and all accrued

interest and fees and all other DIP Obligations, as well as the Prepetition Indebtedness, shall, in

each instance, be immediately due and payable and the Postpetition Secured Parties and the

Prepetition Agent and the Prepetition Lenders shall have all other rights and remedies provided

WM01/

PNL - Revised Final DIP Order (10-1)

in this Final Order, the other Postpetition Financing Documents, the Prepetition Financing

Documents and applicable law.

28.    **Automatic Stay Modification.**  The automatic stay provisions of section 362 of

the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the

Postpetition Secured Parties (i) to file any financing statements or other documents appropriate

in their discretion and (ii) upon the occurrence and during the continuation of any Event of

Default, and upon notice as provided for herein, without further order of or application to this

Court, to exercise all rights and remedies provided for in the Postpetition Financing Documents

or under applicable law, including, without limitation, the right to: (a) apply immediately any

and all amounts in accounts maintained by the Debtors with any of the DIP Lenders against the

DIP Obligations, and otherwise enforce rights against the Postpetition Collateral or the

Prepetition Collateral in the possession of any of the DIP Lenders for application towards the

DIP Obligations; and (b) take any other actions or exercise any other rights or remedies

permitted under this Final Order, the other Postpetition Financing Documents or applicable law

to effect the repayment and satisfaction of the DIP Obligations; *provided, however,* that any DIP

Lender shall provide five (5) Business Days' written notice (by facsimile, telecopy, electronic

mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the Prepetition Agent,

counsel to the Steering Group, and counsel to the Committee of such Event of Default. The

rights and remedies of the Postpetition Secured Parties specified herein are cumulative and not

exclusive of any rights or remedies that the Postpetition Secured Parties may have under the

other Postpetition Financing Documents or otherwise.  The Bankruptcy Court shall retain

exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies

under the DIP Loans and Post Petition Financing Documents and with respect to the assets of the

-30-

WM01/

PNL - Revised Final DIP Order (10-1)

Debtor. The only issue as to which the Borrower or any other party in interest may seek

Bankruptcy Court intervention at any hearing seeking to delay or prevent the Post Petition

Secured Parties from exercising remedies shall be whether an Event of Default has, in fact,

occurred and is continuing under the DIP Credit Agreement.

29.    **Remedies.** If the Postpetition Secured Parties shall at any time exercise any of

their respective rights and remedies hereunder, under the DIP Loans and Postpetition Financing

Documents or under applicable law in order to effect payment or satisfaction of the DIP

Obligations or to receive any amounts or remittances due hereunder or under the other

Postpetition Financing Documents, including without limitation, foreclosing upon and selling all

or a portion of the Postpetition Collateral or the Prepetition Collateral, the Postpetition Secured

Parties shall have the right without any further action or approval of this Court to exercise such

rights and remedies as to all or such part of the Postpetition Collateral or the Prepetition

Collateral as the Postpetition Secured Parties shall elect in their sole discretion, subject to the

provision by the applicable Postpetition Secured Parties of the written notice as provided in the

preceding paragraph. No holder of a lien or security interest primed by this Final Order or

granted by the Debtors as adequate protection shall be entitled to object on the basis of the

existence of any such lien or security interest to the exercise by the Postpetition Secured Parties

of their respective rights and remedies under the Postpetition Financing Documents or under

applicable law to effect satisfaction of the DIP Obligations or to receive any amounts or

remittances due hereunder or under the other Postpetition Financing Documents. The

Postpetition Secured Parties shall be entitled to apply the payments or proceeds of the

Postpetition Collateral or the Prepetition Collateral in accordance with the provisions of the

Postpetition Financing Documents, and in no event shall any of the Postpetition Secured Parties

-31-

be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Postpetition Collateral or the Prepetition Collateral or otherwise.

30.    **No Waiver of Remedies.**  The failure or delay by (i) any Postpetition Secured Party to seek relief or otherwise exercise its rights and remedies under this Final Order or any other Postpetition Financing Documents or (ii) the Prepetition Agent or any Prepetition Lender to seek relief or otherwise exercise its rights and remedies under this Final Order shall not constitute a waiver of any of the rights of such Postpetition Secured Party, Prepetition Agent or Prepetition Lender hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party to the Postpetition Financing Documents or the Postpetition Collateral or Prepetition Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other parties to the Postpetition Financing Documents and/or Postpetition Collateral or Prepetition Collateral.

31.    **Successor and Assigns.**  The provisions of this Final Order shall be binding upon and inure to the benefit of each of the Postpetition Secured Parties, the Prepetition Agent, Prepetition Lenders and Debtors and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtors, their estates, or with respect to the property of any of their estates) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

32.    **Additional Assurances.**  The Debtors are authorized and directed to do and perform all acts to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be

-32-

required or necessary for the Debtors' performance under the Postpetition Financing Documents, including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii) the payment of the fees, indemnification obligations and other expenses described or provided in the Postpetition Financing Documents as such become due, including, without limitation, agent fees, commitment fees and underwriting fees and attorneys', financial advisors' and accountants' fees and disbursements as provided for in the Postpetition Financing Documents. None of such attorneys', financial advisors' and accountants' fees and disbursements shall be subject to the approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. In addition, the Debtors are hereby authorized and directed to indemnify the Postpetition Secured Parties against any liability arising in connection with the Postpetition Financing Documents to the extent provided in the Postpetition Financing Documents. All such fees, expenses and indemnities of the Postpetition Secured Parties shall constitute DIP Obligations and shall be secured by the Postpetition Liens and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Order and the other Postpetition Financing Documents.

33.    **Adequate Protection.** The Prepetition Agent and the Prepetition Lenders are hereby provided with the following forms of adequate protection (which the Postpetition Agent acknowledges is acceptable to it):

a.    The Debtors shall immediately upon entry of this Final Order pay all outstanding reimbursable fees and expenses, including the reasonable attorneys' fees, which shall be paid by the Debtors directly to the respective attorneys and not the Prepetition Agent on

-33-

their behalf, related to the Chapter 11 Cases, of the Prepetition Agent and members of the

Steering Group, (the "*Prepetition Lender Fees*") subject to ordered Paragraph 9 above, and

thereafter shall pay subsequently incurred Prepetition Lender Fees as they are invoiced, within

15 days from the receipt of an invoice, subject to the ordered Paragraph 9 above.  As additional

adequate protection, the Debtors shall pay to the Prepetition Agent all post-petition fees and

expenses, from time to time, relating to letters of credit under the Prepetition Credit Agreement

upon presentment.

        b.      As adequate protection of the interests of the Prepetition Agent and

Prepetition Lenders in the Prepetition Collateral in accordance with sections 363(e) and 364(d)

of the Bankruptcy Code, the Prepetition Agent is hereby granted (for the ratable benefit of the

Prepetition Agent and the Prepetition Lenders) replacement security interests and replacement

liens on all of the Postpetition Collateral (the "*Adequate Protection Liens*"), subject and junior

only to the Postpetition Liens, the Carve-Out and Non-Primed Liens (but only to the extent such

Non-Primed Liens were senior in priority to the Prepetition Liens as of the Petition Date), to

secure an amount of the Prepetition Indebtedness (which amount as defined below is referenced

as the "*Adequate Protection Obligations*") equal to the lesser of (a) the amount of the

Prepetition Indebtedness as of the Petition Date, and  (b) the sum of, without duplication, the

aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition

Collateral, caused by (i) the aggregate reduction in the Prepetition Agent's and Prepetition

Lenders' interest in the Prepetition Collateral available to satisfy Prepetition Indebtedness as a

consequence of the priming authorized hereunder, (ii) depreciation, use, sale, loss, decline in

market price or otherwise (other than by payment of the Prepetition Indebtedness which is not

secured by the Adequate Protection Liens) of the Prepetition Collateral and (iii) the sum of the

WM01/

PNL - Revised Final DIP Order (10-1)

aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition

Collateral which is applied in accordance with this DIP Facility or otherwise in payment of the

DIP Obligations or any other obligations or expenses of the Borrower other than the Prepetition

Indebtedness but only to the extent of any decrease in the value of the Prepetition Collateral on

account of subsections (i), (ii) and (iii) above.

c.    The Adequate Protection Liens granted pursuant to subparagraph (b)

above shall be deemed to be perfected automatically upon entry of this Final Order, without the

necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or

other similar instrument or document in any state or public record or office and without the

necessity of taking possession or "control" (within the meaning of the Uniform Commercial

Code) of any Postpetition Collateral or Prepetition Collateral.

d.    If, and to the extent that, the Adequate Protection Liens and adequate

protection payments described herein are insufficient to provide adequate protection for the

Prepetition Agent and the Prepetition Lenders, the Prepetition Agent and the Prepetition Lenders

are hereby granted allowed superpriority claims pursuant to sections 361, 363 and 507(b) of the

Bankruptcy Code (the "*Adequate Protection Claims*"), which Adequate Protection Claims shall

be subordinate to and subject to the Carve-Out.  The Adequate Protection Claims shall have

priority in payment over any and all administrative expenses of the kinds specified or ordered

pursuant to any provision of the Bankruptcy Code, subject to the Carve-Out and Superiority

Claims,  and shall at all times be senior to the rights of the Debtors and any successor trustee or

any creditor in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.

The Adequate Protection Claims shall be in an amount equal to the aggregate diminution in

WM01/

PNL - Revised Final DIP Order (10-1)

value, if any, after the Petition Date of the Collateral subject to the Carve-Out and Superpriority

Claims. Except for the Carve-Out and Superpriority Claims, no cost or expense of

administration arising under or in connection with these Chapter 11 Cases, including, without

limitation, those resulting from the conversion of any of the Chapter 11 Cases pursuant to section

1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Adequate Protection

Claims of the Prepetition Agent and the Prepetition Lenders.

34.    **Release of Claims and Defenses.**

a.    Subject to the rights of the Committee as provided in the following

subparagraph, each Debtor in its individual capacity forever releases, waives and discharges the

Prepetition Agent and Prepetition Lenders (whether in its prepetition or postpetition capacity),

together with its respective officers, directors, partners, managers, employees, agents, attorneys,

professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the *"Released*

*Parties"*), from any and all claims and causes of action arising out of, based upon or related to, in

whole or in part, any of the Prepetition Financing Documents, any aspect of the prepetition

relationship between any Debtor relating to any of the Prepetition Financing Documents or any

transaction contemplated thereby, on the one hand, and any or all of the Released Parties, on the

other hand, or any other acts or omissions by any or all of the Released Parties in connection

with any of the Prepetition Financing Documents or their prepetition relationship with any

Debtor or any affiliate thereof relating to any of the Prepetition Financing Documents or any

transaction contemplated thereby, including, without limitation, any claims or defenses as to the

extent, validity, priority or perfection of the Prepetition Liens or Prepetition Indebtedness,

-36-

WM01/

PNL - Revised Final DIP Order (10-1)

"lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of

the Bankruptcy Code or any other claims and causes of action (all such claims, defenses and

other actions described in this Paragraph are collectively defined as the "*Claims and Defenses*").

Notwithstanding the foregoing, Claims and Defenses shall not include any claims or causes of

action relating to or arising out of the alleged taping of a meeting of the Debtors and certain

Prepetition Lenders on November 17, 2008 (the "*Taping Claims*"). All such Taping Claims are

expressly excluded from the releases provided herein. Additionally, nothing contained in this

subparagraph shall affect the rights of the Committee to undertake any action, on its own behalf,

or on behalf of the Debtors' estates, with respect to any investigation or prosecution of, Claims

and Defenses and an investigation or prosecution of the Taping Claims that is permitted in

subparagraphs (b) and (c) of this Paragraph, nor the Debtors' rights with respect to any

investigation or prosecution of Taping Claims pursuant to the Stipulation and Order entered by

this Court on August 28, 2009 [Docket No. 1006].

　　　　　b.　　Notwithstanding anything contained herein to the contrary and subject to

the ordered Paragraph 22, the extent, validity, priority, perfection and enforceability of the

Prepetition Liens and all acknowledgments, admissions, confirmations, and releases by the

Debtors above, are subject to the rights of the Committee to commence an action or otherwise

challenge the amount of the Prepetition Indebtedness and/or the validity, perfection, extent or

priority of security interests in the Prepetition Collateral (collectively, an "*Action*") on behalf of

the Debtors' estates with respect to the Prepetition Collateral. The Committee's period to

commence an Action shall terminate, upon written notice (the "*Action Notice*") from Prepetition

Agent to Committee's counsel of record, on the last day of the month which includes the date

that is fifteen (15) days after the date of the Action Notice. Except to the extent that an Action is

WM01/

PNL - Revised Final DIP Order (10-1)

timely commenced within such time period (or such timely asserted Action does not result in a

final and non-appealable order of this Court that is contrary to clauses (i) through (iv) of

subparagraph (c) of this Paragraph), then any and all Claims and Defenses against any of the

Released Parties shall be, without further notice to or order of the Court, deemed to have been

forever relinquished, released and waived as to such Committee and all other persons or entities.

If such Action is timely asserted on or before such date, any and all Claims and Defenses that are

not expressly asserted in such Action shall be deemed, immediately and without further action, to

have been forever relinquished, released and waived as to such Committee and all other persons

or entities. Notwithstanding anything herein to the contrary, the Committee may use Lender

Funds and/or the Carve-Out: (i) in an aggregate amount for the periods before and after the entry

of this Final Order not to exceed $75,000 (subject to the right of the Committee to seek to

increase this limit and the right of the Prepetition Agent or any Prepetition Lender to object to

any such request) for purposes of investigating claims that might be asserted in an Action, or (ii)

in an aggregate amount for the periods before and after the entry of this Final Order not to

exceed $100,000 (subject to the right of the Committee to seek to increase this limit and the right

of the Prepetition Agent or any Prepetition Lender to object to any such request) for purposes of

investigating the Taping Claims; provided, however, that any investigation or prosecution of the

Taping Claims shall be suspended until the earlier of (i) January 2, 2010 and (ii) such time as all

indebtedness under the DIP Credit Agreement is paid in full, as set forth in the Stipulation and

Order entered by this Court on August 28, 2009 [Docket No. 1006]. The Prepetition Agent and

Prepetition Lenders reserve all rights to object to fees incurred to commence or pursue an Action.

        c.     Except to the extent that an Action is timely commenced within such time

period, or such timely asserted Action does not result in a final and non-appealable order of this

WM01/

PNL - Revised Final DIP Order (10-1)

Court that is contrary to clauses (i) through (iv) of this subparagraph, then, without the

requirement or need to file any proof of claim with respect thereto, (i) the Prepetition

Indebtedness shall constitute allowed, secured claims for all purposes in the Chapter 11 Cases

and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any

chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the

Bankruptcy Code (each, a "*Successor Case*"), (ii) the Prepetition Liens (as applicable) shall be

deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except as to

the Postpetition Liens and as otherwise specified in this Final Order, the other Postpetition

Financing Documents and the Prepetition Financing Documents) or avoidance for all purposes in

the Chapter 11 Cases and any Successor Case, (iii) the release of the Claims and Defenses

against the Released Parties shall be binding on all parties in interest in the Chapter 11 Cases and

any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition Liens (as applicable),

releases of the Claims and Defenses against the Released Parties (as applicable), and prior

payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any

other or further claims, cause of action, objection, contest, setoff, defense or challenge by any

party in interest for any reason, including, without limitation, by any successor to or estate

representative of any Debtor.

35.    **Limits on Lender Liability.**  Nothing in this Final Order or in any of the

Postpetition Financing Documents, the Prepetition Financing Documents or any other documents

related to this transaction shall in any way be construed or interpreted to impose or allow the

imposition upon the Postpetition Agent, the DIP Lenders, the Prepetition Agent or the

Prepetition Lenders of any liability for any claims arising form any and all activities by the

WM01/

PNL - Revised Final DIP Order (10-1)

Debtors in the operation of their businesses in connection with the Debtors' post-petition restructuring efforts.

36.    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification of Stay of this Final Order.** The Postpetition Agent, DIP Lenders, Prepetition Agent, and the Prepetition Lenders have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Postpetition Agent, the DIP Lenders, Prepetition Agent and the Prepetition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or any lien, claim or priority authorized or created hereby. Any liens or claims granted to the Postpetition Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

37.    **No Third Party Rights.** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

WM01/

PNL - Revised Final DIP Order (10-1)

38.    **Reporting.** The Debtors shall keep their books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' business. The Debtors shall provide to the Postpetition Secured Parties, Prepetition Lenders and the Committee the reports of operations required to be provided by the DIP Credit Agreement at the same time and in the same manner as set forth therein. The Debtors shall provide to the Postpetition Secured Parties, Prepetition Lenders and to the Committee's professionals: (a) on Thursday of each week a rolling 13-week cash forecast, with a comparison of actual versus forecasted results for the prior week ending on Sunday; (b) on Thursday of each week, a reconciliation of the Budget showing actual versus budgeted use of Lender Funds for the prior week ending on Sunday; (c) monthly accounts receivable aging and accounts payable aging schedules beginning with May 2009; (d) weekly reports of Philadelphia Newspapers LLC print advertising revenue performance by type (retail, national, automotive, employment, real estate and other classified) showing year over year performance for the prior week ending on Sunday; and (e) the Debtors' management shall participate on weekly calls with the Postpetition Secured Parties and Prepetition Lenders.

39.    **Waiver of Any Applicable Stay.** Any applicable stay is hereby waived and shall not apply to this Final Order.

40.    **Finding of Fact and Conclusion of Law.** This Final Order shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and shall take effect and be fully enforceable immediately upon execution hereof.

41.    **Jurisdiction.** The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

-41-

Dated: ___10/2___, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WM01/

PNL - Revised Final DIP Order (10-1)