IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| PHILADELPHIA NEWSPAPERS, LLC, ) | |
| et al.[1], ) | Case No. 09-11204 (SR) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**THE MCCLATCHY COMPANY'S RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER REJECTING ASSET PURCHASE AGREEMENT AND RELATED AGREEMENTS BETWEEN CERTAIN OF THE DEBTORS AND THE MCCLATCHY COMPANY**

The McClatchy Company ("McClatchy"), by its undersigned counsel, hereby responds in opposition to the Debtors' Motion for an Order Rejecting Asset Purchase Agreement and Related Agreements between Certain of the Debtors and The McClatchy Company (the "Motion").

BACKGROUND

1. Debtor Philadelphia Media Holdings LLC ("PMH") and its affiliated Debtors (collectively, the "Debtors") filed their voluntary Chapter 11 petitions on February 22, 2009, and have continued to operate and maintain their businesses as Chapter 11 debtors-in-possession.

2. PMH and its affiliated Debtors acquired the Philadelphia Newspaper, Inc. business in a stock and asset sale from McClatchy, pursuant to a Stock and Asset Purchase Agreement dated May 23, 2006 (the "APA") and various related agreements that were incorporated by reference into the APA, including a certain Assignment and Assumption Agreement dated June 29, 2006, which made the obligations undertaken by PMH also binding on PMH Acquisition, LLC, Philadelphia Newspapers, LLC, PMH Holdings, LLC and Philly Online, LLC.

---

[1] The Debtors are: PMH Acquisition, LLC, Broad Street Video, LLC, Philadelphia Newspapers, LLC, Philadelphia Direct, LLC, Philly Online, LLC, PMH Holdings, LLC, Broad Street Publishing, LLC, Philadelphia Media, LLC, and Philadelphia Media Holdings, LLC.

3. Pursuant to the APA and Schedule C thereto, the Debtors received, among the Acquired Assets, McClatchy's interest in the workers compensation insurance policies for the Philadelphia Newspapers business that the Debtors acquired. Part of the consideration given by the Debtors in the transaction was the assumption of certain liabilities (the "Assumed Liabilities"), which would carry forward into the future, after Closing. The Assumed Liabilities included obligations to pay uninsured workers compensation and other employee claims. These otherwise uninsured workers compensation claims are paid in the first instance by The Travelers Insurance Company ("Travelers"), the insurance carrier handling the Philadelphia Newspaper businesses' workers compensation claims to that point, and Travelers in turn bills McClatchy for those liabilities.

4. Because McClatchy was not released by Travelers for the uninsured amounts due for these claims, McClatchy has administered the workers' compensation obligations that were assumed by the Debtors under the APA, paying the ongoing payments owed to Travelers and seeking reimbursement from the Debtors pursuant to the APA.

5. The APA contains a "severability" clause that permits the severing of a provision from the overall agreement only where that provision is "held invalid, illegal or unenforceable." See APA, § 11.12.

6. Until the Petition Date, the Debtors reimbursed McClatchy for such claims routinely.

7. Post-petition, with the full knowledge of the Debtors, McClatchy has continued to administer the workers compensation obligations, making payments to Travelers on the Debtors' behalf, and has provided notice to the Debtors of its performance of these continuing obligations post-petition.

8.  The Debtors maintain a current workers compensation insurance policy. The obligation of a business to pay workers compensation claims exists under state law and is a cost of doing business.

9.  The Debtors have filed a First Amended Joint Chapter 11 Plan (the "Plan"), pursuant to which they seek to sell substantially all their assets, as an ongoing enterprise. Among the assets to be sold, as set forth in the proposed "Stalking Horse Agreement" [docket no. 1007, Ex. A] are:

> 2.1(j) Sellers' rights in all insurance policies, including workers' compensation policies, to the extent transferable and to the extent the coverage relates to the Assets or the Assumed Liabilities.

Stalking Horse Agreement. § 2.1(j).

10.  As set forth in the Debtors' First Amended Disclosure Statement ("Disclosure Statement" or "D/S") in support of their Plan (docket no. 1338),

> Two of the Purchaser's investors have committed to backstop up to $17,400,000 in letters of credit to secure the Purchaser's obligations under a workers' compensation policy and credit card processing agreement; that backstop will constitute debt of the Purchaser.

D/S, §VI.H.3, p. 44.

11.  Although the Debtors propose to sell their rights and obligations in connection with their workers' compensation policies, the Motion seeks to reject their liabilities in connection with the workers compensation obligations in force when they acquired their business.

## OBJECTIONS TO THE MOTION TO REJECT

A.  Rejection of the APA is Inconsistent with the Debtors' Retention of the Balance of the Benefits of the APA

12.  As the Debtors recognize in bringing the Motion, the APA is "executory," because performance remains due on both sides. *See Sharon Steel Corporation v. National Fuel*

3

*Gas Distribution*, 872, F.2d 36 (3d Cir. 1989) (executory contract characterized by reciprocal obligations continuing into the future). A contract remains executory even though the sole unperformed material obligation of the debtor is to pay money. *See In re Columbia Gas Systems, Inc.*, 50 F.3d 233, 240 (3d Cir. 1995). The APA and its related Assumption Agreement remain executory, in that the Debtors are fully responsible for all the workers compensation claims that were assumed when they purchased their business, and McClatchy has continued to service those claims as an intermediary to the workers compensation policy insurer, Travelers.

13. Essentially, what the Debtors are seeking is to retain all the benefits they have already received from the APA – which is to say, all of the Philadelphia Newspaper business; and to sever from the APA the assumed workers compensation liabilities, and reject them only.

14. An executory contract or unexpired lease must be assumed or rejected in its entirety. *See Stewart Title Guarantee Company v. Old Republic National Title Insurance*, 83 F.3d 735, 741 (5th Cir.1996). The issue of severability under § 365 requires that an executory contract be rejected *in toto* to prevent a debtor from picking through an agreement, accepting the benefits while sloughing the burdens. *See Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 197 Fed.Appx. 285 at *2 (5th Cir. 2006); *In re Cafe Partners/Washington 1983*, 90 B.R. 1, 5 (Bankr.D.D.C.1988) ("the Debtor may not pick and choose from among the desirable and undesirable portions of the contract").

15. Severability requires a determination of whether a part of a contract or lease, or part performance thereunder, can be separated and treated as an independent legal obligation. *Id. In re Integrated Health Services, Inc.*, 2000 WL 33712484 at *3 (Bankr. D. Del. 2000).

16. Under Pennsylvania law, "[t]he primary inquiry" in resolving the question of severability is "whether the language employed in the contract clearly indicates the intention of

DNC/116857-0001/2374651/2

the parties that the contract of the parties be entire or severable." *In re Karfakis*, 162 B.R. 719, 725 (Bankr. E.D.Pa. 1993), *quoting Heilwood Fuel Co., Inc. v. Manor Real Estate Co.*, 405 Pa. 319, 327, 175 A.2d 880, 884 (1961). "If the language of the parties' written agreement does not make their intention clear, the court should seek other aids; for example, the court can use practical interpretation and consider the parties' construction of the agreement as evidenced by their conduct." 62 B.R. at 725.

17. In a Fifth Circuit case, the court of appeals rejected a debtor's attempt to do something similar to what the Debtors are attempting to do here. *See In re Mirant Corp*, 197 Fed.Appx. 285 (5th Cir.2006) (applying District of Columbia law). In *Mirant*, the debtor Mirant Corporation entered into a utility privatization contract with Potomac Electric Power Company by which it had agreed to buy certain electrical generating facilities from Potomac with the plan of then selling electricity to Potomac's former customers. Potomac already had some $5 billion of preexisting agreements with some customers to provide electricity, called Purchase Power Agreements ("PPAs"). The assignability of those PPAs to Mirant was not clear, and as part of the contract between Mirant and Potomac, if some or all of those PPAs could not be assigned, the parties had an alternative provision in the contract called the "back-to-back" arrangement. The back-to-back arrangement would cost Mirant substantial sums of money per month to operate, although it would also modify the purchase price Mirant was to pay Potomac. Though most of the PPAs were assignable to Mirant, five were not, and Potomac informed Mirant that the back-to-back arrangement in the contract would be used for those five contracts. This resulted in costs of $10-15 million per month to Mirant. After Mirant filed for bankruptcy, it attempted to sever the back-to-back portion of the contract from the remaining portion of the contract, to relieve itself of the $10-$15 million in monthly costs. Examining the severability of

5

the back-to-back segment of the contract, the Fifth Circuit found no language in the contract or other relevant evidence that would support a finding of any intention of the parties to treat the back-to-back provision as severable.

18. There is a presumption that when parties enter into a contract, each and every term and condition is in consideration of all the others, unless otherwise stated. *Hercules, Inc. v. United States,* 292 F.3d 1378, 1381 (Fed.Cir.2002) (stating that a contract must be construed "to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.").

19. In this case, the APA contains a "severability" clause that permits the severing of a provision from the overall agreement only where that provision is "held invalid, illegal or unenforceable." See APA, § 11.12. As there is no issue here of invalidity, illegality or unenforceability, the parties' intent was to not otherwise sever any provisions from any others.

20. Since the Debtors have accepted the benefits of the APA, they should not be allowed to divide out the assumed workers compensation liabilities.

B. Rejection of the APA Is Inconsistent with the Debtors' Proposed Sale and Assignment of Their Rights and Obligations Under Workers Compensation Policies

21. Rejecting the APA with McClatchy, in order to reject the Debtors' Assumed Liabilities for the workers compensation obligations the Debtors assumed when they bought the Philadelphia Newspapers business from McClatchy, would be inconsistent with the Debtors' plan to sell substantially all their assets, including their rights and obligations under or with respect to their workers compensation insurance.

22. The Debtors' pre-petition rights and obligations with respect to workers compensation coverage and claims include both those existing when ownership of the Debtors' business was transferred from McClatchy to the Debtors as well as those that that came into

existence thereafter. The Disclosure Statement and the Stalking Horse Agreement do not distinguish between these two pre-petition time frames, with respect to workers compensation claims. As noted above, the Debtors' plan provides for these workers compensation liabilities to be assumed.

23. The Debtors have recognized the value to their business and their relations with their unions and employees to continue to fund existing obligations under workers compensation policies in a sale of the Debtors' business.

24. Accordingly, the Court should not give any deference as a proper business judgment to the Debtors' inconsistent request, through the Motion, to reject a subset of the same obligations that they propose to assume and assign in the proposed sale under their Plan.

C. Regardless of Rejection of the APA, McClatchy will Still be Entitled to an Administrative Expense Claim for Payments Made Prior to the Rejection Date

25. Even if the rejection of the APA Agreements is allowed as requested by the Debtors, the Court should recognize that McClatchy will be entitled to an administrative claim for the claims handled and paid during the course of this Chapter 11 case.

26. The bankruptcy court may award a creditor the actual, necessary expenses which were incurred "in making a substantial contribution in a case under chapter 9 or 11." 11 U.S.C. § 503(b)(3)(D). The services engaged by creditors "are presumed to be incurred for the benefit of the engaging party and are reimbursable if" the services "directly and materially contributed" to the reorganization. *Lebron v. Mechem Financial Inc.*, 27 F.3d 937 (3d Cir. 1994).

27. "If [a] debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract," the debtor-in-possession must "pay for the reasonable value of those services." N.*L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).

DNC/116857-0001/2374651/2

28. It is well established that a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction. *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987); *see In re Goody's Family Clothing, Inc.*, 401 B.R. 656 (D.Del. 2009). Quoting the much-cited *Mammoth Mart* opinion, the District Court for the District of Delaware recently reiterated: " When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a [pre-petition] contract that has not been rejected, the purposes of [§ 503(b)(1)] plainly require that their claims be afforded priority." *In re Goody's Family Clothing*, 401 B.R. at 672, quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976).

29. The Debtors have been receiving the benefit of the bargain that they entered into, without making payment for the services being rendered.

30. "There can be no doubt that continuing workers compensation insurance is essential to preserving the estate of a Chapter 11 debtor in possession." *In re MEI Diversified, Inc.*, 106 F.3d 829, 832 (8th Cir. 1997).

31. Insofar as consideration need be given to whether there was an "inducement" of McClatchy's performance by the debtors-in-possession (*i.e.*, by the debtors, after the Petition Date) [*see, e.g., In re American Home Mortg. Holdings, Inc.*, 2008 WL 4831768 at *9 (Bankr. D.Del. 2008)], there is no doubt that the Debtors knew that McClatchy was continuing to make these payments of workers compensation claims on the Debtors' behalf through the course of the bankruptcy case, and did nothing to discourage it or otherwise to indicate that the Debtors would not resume the satisfaction of their obligations, until the filing of the Motion seeking to reject the APA.

DNC/116857-0001/2374651/2

32. The absence of an affirmative post-petition act by the Debtors would not be detrimental to the treatment of McClatchy's post-petition handling of the Debtors' assumed workers compensation obligations as an administrative expense. *In re MEI Diversified, Inc.*, 106 F.3d at 832. As the *MEI Diversified* court concluded, MEI as debtor in possession could have terminated the insurance, which was in effect at the time MEI filed its Chapter 11 petition, "either by exercising its power to reject executory contracts, . . . or by exercising its contractual right to cancel the policy at any time. MEI did not do so" and thereby continued to receive the benefits of an insurance product necessary to its post-petition operations. *Id.*

33. Bankruptcy courts have authorized the treatment of all workers' compensation claims, whether arising prior to or after commencement of the Chapter 11 cases, as administrative expense claims to be paid pursuant to a Chapter 11 plan. *In re PWS Holding Corp.*, 1999 WL 33510165 at *7 (Bankr. D.Del. 1999).

34. Accordingly, if the Debtors' Motion is granted, it should be with the recognition that McClatchy will be entitled to an administrative expense claim for the workers compensation liabilities handled through the date that such rejection is granted.

D. <u>If the Motion is Granted, the Rejection Should Not Be Retroactive</u>

35. For purposes of the anticipated consideration of the administrative expense, the rejection of the APA should not be permitted to be retroactive to the filing of the Motion, as requested by the Debtors. The request for retroactive treatment has not been justified by the Debtors.

WHEREFORE, McClatchy respectfully requests that the Motion be denied, or alternatively, that any rejection of the APA be joined with recognition of McClatchy's

9

DNC/116857-0001/2374651/2

entitlement to an administrative expense claim in connection with the post-petition services rendered by McClatchy with respect to the Debtors' workers compensation liabilities.

Dated: November 10, 2009

**MORRIS JAMES LLP**

/s/ Brett D. Fallon
Brett D. Fallon (PA Bar No. 64320)
Douglas N. Candeub (PA Bar No. 40546)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: 302.888.6800
Facsimile: 302.571.1750
Email: bfallon@morrisjames.com
        dcandeub@morrisjames.com

Attorneys for The McClatchy Company