## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| PHILADELPHIA NEWSPAPERS, LLC, ET AL | : CASE NO. 09-11204 SR |
| | : |
| DEBTOR(S) | : JOINTLY ADMINISTERED |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Debtors' Motion For an Order Rejecting Asset Purchase Agreement and Related Agreements Between Certain of the Debtors and the McClatchy Company (McClatchy).[1]  The Motion is opposed.  After hearing held November 17, 2009, the Court took the matter under advisement.  For the reasons which follow, the Motion will be granted.

*Background*

Because the parties are in agreement as to what are most of the salient facts, little, if any, in the way of documentary or testimonial evidence was offered.  The following is established by their pleadings: that the parties entered into an Asset Purchase Agreement (APA) in May 2006 (Motion, ¶ 7; Response, ¶ 2); that under the APA the Debtors assumed certain liabilities of McClatchy (Motion ¶ 7, Response ¶ 3);

---

[1]The Official Committee of Unsecured Creditors has filed a Joinder to the Motion.  In it, they have included their own proposed form of Order with suggested revisions to the Debtors' proposed Order.  The Court finds the Committee's Order to be satisfactory and will enter it.

that at the time of the sale, McClatchy had workers compensation insurance in place

(Motion ¶ 9, Response ¶ 3); that the Debtors assumed liability for pre-existing workers

compensation claims on those policies (Motion ¶ 9; Response ¶ 4); that although the

Debtors assumed that liability, McClatchy remained listed as the insured on those

policies (*Id*.); that McClatchy has continued to pay those "historical" claims (*Id*.); and

that the Debtors routinely reimbursed McClatchy through the petition date but not

thereafter.  Response, ¶ 6; Transcript of Hearing (T-) November 17, 2009, p.50

*The Arguments*

The Debtors make two alternative contentions: first, either what is owed

McClatchy is an unsecured debt giving rise to an unsecured claim, or it is an executory

contract to the extent that performance remains due from both parties.  If it is

executory, Debtors maintain, then as an exercise of their business judgment, they may

reject that agreement resulting in a damage claim.[2]  *See* Motion, ¶ 10.

McClatchy offers a number of arguments in opposition.  First, it contends that if

a contract is to be rejected, then the Debtors must reject the *entire* agreement.  *See*

McClatchy Response ¶¶ 13-20.  Second, it argues that rejection of this part of the APA

is inconsistent with the Debtors' proposed plan of reorganization.  *Id*. ¶¶ 21-24.  Third,

and alternatively, should the Court allow rejection of this part of the APA, then

McClatchy is entitled to an administrative expense claim for payments made prior to

rejection.  *Id*. ¶¶ 25-34.  Finally, and as a corollary to the preceding point, any order

---

[2]At the hearing, the Debtors explained that they do not believe that the agreements with
McClatchy are executory, but that they filed the motion in an abundance of caution.  T-48.

2

granting rejection should *not* be made retroactive to the date on which Debtors filed

this motion.  *Id.* ¶ 35

*Executory Contract*

The threshold question is whether this aspect of the agreement with McClatchy

is to any extent executory.  As this is the Debtor's Motion, it has the burden of proving

that it is executory.  *See In re Exide Technologies*, 340 B.R. 222, 229 (Bankr.D.Del.

2006)  If this agreement cannot be characterized as executory, then it consists of no

more than another of the Debtors' liabilities.  *See In re Columbia Gas Systems, Inc.*, 50

F.3d 233, 239 (3d Cir.1995).  "Although the Bankruptcy Code contains no definition of

an executory contract, courts have generally relied on the following definition: '[An

executory contract is] a contract under which the obligation of both the bankrupt and

the other party to the contract are so far unperformed that the failure of either to

complete performance would constitute a material breach excusing performance of the

other.'"  *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3d

Cir.1989) *quoting* Countryman, *Executory Contracts in Bankruptcy, Part 1,* 57

Minn.L.Rev. 439, 460 (1973); *see also N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 522

n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (although Bankruptcy Code

provides no definition of executory contract, legislative history of § 365(a) defines the

term to mean a contract on which performance remains due on both sides).  What

performance remains due from each party to this agreement?

In the case of McClatchy, it continues to pay Travelers Insurance Company for

coverage of workers compensation and other employee claims.  The Court therefore

finds performance to remain as to McClatchy.

What is required of the Debtors in exchange for McClatchy's payments to Travelers is reimbursement.  At the hearing, Debtors' counsel pegged the monthly reimbursement to McClatchy under these policies at about $200,000.  T-50.  This figure was not disputed.  Failure to pay per contract terms is a material performance making a contract executory.  *See Columbia Gas, supra* at 240.  That supports a finding that performance is equally due on the Debtors' part.  What follows from that is that the parties' agreement with regard to the historical workers compensations claim remains executory.

*Standard for Rejection*

Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession[3] "subject to the court's approval may ... reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065, 1075 (3rd Cir.1992).  "This provisions allows a debtor to "relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.,* 83 F.3d 735, 741 (5th Cir.1996) *(quoting in re Muerexco Petroleum, Inc.,* 15 F.3d 60, 62 (5th Cir.1994)).

The standard applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard.

---

[3]Although this section speaks only of a trustee, a debtor in possession is given the same power pursuant to § 1107.

*See Sharon Steel, supra*, 872 F.2d at 39-40; *NLRB v. Bildisco & Bildisco  In re Bildisco)*, 682 F.2d 72, 79 (3d Cir.1982), *aff'd*, 465 U.S. 513 (1984); *see also NLRB v. Bildisco & Bildisco* 465 U.S. 513, 523, 104 S.Ct. 188, 1194-1195 (1984); *In re Federated Dep't Stores, Inc.,* 131 B.R. 808, 811 (S.D.Ohio 1991) ("Courts traditionally have applied the business judgement standard in determining whether to authorize the rejection of executory contracts and unexpired leases.")  Rejection of an executory contract is appropriate where such rejection would benefit the estate.  *See Sharon Steel Corp.,* 872 F.2d at 39-40 *(citing Wheeling-Pittsburgh Steel Corp v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.),* 72 B.R. 845, 846 (Bankr.W.D.Pa.1987)). The business judgment standard requires that the Court approve the debtor's business decision unless it is the product of bad faith, whim or caprice.  *See In re Trans World Airlines, Inc.*  261 B.R. 103, 121 (Bankr.D. Del 2001); *see also Lubrizol Enter., Inc. v. Richmond Metal Finishers,* 756 F.2d 1043, 1047 (4th Cir.1985) *cert denied* 475 U.S. 1057 (1986) (same)

As grounds for rejecting this agreement, the Debtors explain that they consider the benefits flowing from it to be *de minimis*.  Motion, ¶ 15.  They posit that rejection of this agreement will result in a general unsecured claim.  *See* Motion, ¶ 16.  This, they say, will aid the Debtors in determining the extent of their total debt.  T-48.  As a legal matter, they are correct: § 365(g)(1) provides that rejection of an executory contract constitutes a prepetition breach of such agreement; § 502(g) provides that claim for rejection damages constitutes a general unsecured claim.

*Severability*

5

McClatchy's rejoinder is not that rejection is the wrong business decision to make, but, rather, that the Debtors are abusing that right.  It contends that the Debtors are improperly attempting to jettison unfavorable parts of the bargain and retain those which they now consider advantageous.  The Debtors dispute that premise maintaining that because the APA has been substantially consummated, all that remains as between the parties is this last *de minimis* obligation.[4]  In other words, the Debtors explain, they are not *severing* any part of the APA, but are rejecting what little remains.

McClatchy is correct in arguing that "an executory contract may not be assumed in part and rejected in part."  3 *Collier on Bankruptcy* ¶ 365.03[1] (15th ed. rev.) *citing Stewart Title, supra,* 83 F.3d at 741-42.  The trustee or debtor-in-possession must either assume the entire contract, *cum onere,* or reject the entire contract, shedding obligations as well as benefits.  *Id.*  However, "[i]f a single contract contains separate, severable agreements the debtor may reject one agreement and not another." *Stewart Title,* 83 F.3d at 741.  "[T]he issue of assumption or rejection of such contracts relates only to those aspects of the contracts which remain unfulfilled as of the date the petition is filed." *In re Tomer,* 128 B.R. 746, 756 (Bankr.S.D.Ill.1991) *citing Delightful Music, Ltd. v. Taylor (Matter of Taylor),* 913 F.2d 102, 106 (3d Cir.1990).  Thus, where a single document embraces several distinct agreements, some of which are executory

---

[4]The Motion explains that in connection with the APA, the parties executed "myriad" other agreements among which was the handling of historical workers compensations claims. Motion, ¶ 10.

and some of which are fully or substantially performed, only the executory portions of

the document are subject to rejection. *In re Mirant Corp.*, 318 B.R. 100, 104

(N.D.Tex.2004) *quoting Stewart, supra* at 741-742; *see also Collier, supra*, citing

Treister, et al., *Fundamentals of Bankruptcy Law*, § 5.04(f), at 249 (5th ed. 2004,

Richard Levin ed.) (explaining that because rejection relieves the estate of the debtor's

remaining obligations under the contract, "it would stand to reason, therefore, that

rejection of a partially performed contract is within the rejection power, because it

relieves the estate of any remaining performance.")

Whether an agreement or contract is severable (or indivisible) for purposes of §

365 rejection is determined by applying the non-bankruptcy, general legal rules

applicable to the agreement at issue. *See, e.g., In re Karafakis,* 162 B.R. 719, 725

(Bankr.E.D.Pa. 1993) (applying Pennsylvania law to test divisibility of contractual

agreements) McClatchy argues that Pennsylvania law applies.  What the Court finds,

however, is that because McClatchy has not made the APA part of the record, it has no

basis upon which to know which state's law controls.  Moreover, that omission leaves

the Court with no basis upon which it might determine to what extent this arrangement

regarding pending workers compensation claims is integrated into the APA.  The only

evidence which bears on that question is the Debtors' representation that the APA has

been substantially consummated and McClatchy's failure to dispute that point.  T-60.

What remains as to McClatchy, Debtors say, is this agreement which they now seek to

reject.  In rejecting it, they explain, they are not at the same time assuming other,

more favorable, parts of the APA.  So what follows, they conclude, is that no "severing"

of a favorable contract term from other unfavorable parts of the same instrument.

Instead, they explained at the hearing, their motivation is to establish "the universe of

potential obligations" so that the Debtors may proceed to the auction of the their

business.  T-48.  The Court finds the Debtors' argument to be persuasive: the Debtors

do not appear to be abusing their rejection right; rather, they appear to be attempting

to ascertain the limit of a particular liability.  This does not strikes the Court as bad

faith, whim or caprice, but, rather, reasonable business decision-making.  Accordingly,

the request for approval of rejection of what remains of the APA will be granted.

*Rejection and Terms
of the Proposed Plan*

McClatchy next argues that rejection of these "historical" workers compensation

claims is in conflict with the Debtors' proposed Disclosure Statement and Stalking Horse

Agreement.  In those documents, McClatchy explains, there is no distinction between

those claims existing prior to the APA and those filed *after it* but *before the bankruptcy*.

Response, ¶ 22.  The Debtors' plan, it goes on, is for workers compensation liabilities to

be assumed.  *Id.*  The Debtors' response is that while the agreement to assume

payment of historical workers compensation claims was part of the APA, that

agreement is not being assumed as part of the Debtors plan.  T-50

The Court's own review of the operative documents confirms Debtors' position.

The Amended Plan and Disclosure Statement make clear that the contracts being

assumed are only those previously assumed, subject to a motion to assume at or prior

to confirmation, or listed on the Schedule of Assumed Contracts.[5]  *See* Amended Plan, §

6.01; Disclosure Statement, p. 41.  Likewise, the Stalking Horse Agreement includes

among the expressly Assumed Liabilities "worker's compensation and other insurance

policies."  *See* Stalking Horse Agreement § 2.3, attached as Appendix F to Disclosure

Statement.  McClatchy reads that to include the insurance coverage which *McClatchy*

had with Travelers when the business was sold to the Debtors.  T-55-56.  That, Debtors

contend, is not correct.  The only workers compensation insurance which the Debtors

had was with Hartford.  T-59; *see also* Declaration of Richard R. Thayer, Exec.V.P.,

Finance in Support of First Day Motions, p.36, ¶ 90 (identifying Debtors' workers

compensation insurance carrier as Hartford).  Because the Debtors were in privity only

with McClatchy and not Travelers (T-59), there is no other workers compensation

insurance policy which the Stalking Horse Agreement proposes to assume.  The Court

thus finds no inconsistency between this Motion and the terms of the Amended Plan.

*Retroactive Rejection*

The Debtors have requested that the Court approve rejection of these remaining

agreements as of October 20, 2009, the date on which this motion was filed.  Motion, ¶

17.  McClatchy, who intends to seek allowance of an administrative expense[6] for

---

[5]Defined as the "schedule listing certain executory contracts and unexpired leases to be
assumed by Debtors and assigned to Purchaser under or in connection with the [Stalking Horse]
Agreement."  *See* First Amended Plan § 1.01.

[6]Typically, rejection of an executory contract effects a prepetition breach of that contract.
*See* 11 U.S.C. § 365(g)(1) (providing rejection of an executory contract constitutes a breach of
such contract or lease immediately before the date of the filing of the petition).  That prepetition
breach entitles the counterparty to a prepetition claim.  *See* 11 U.S.C. § 502(g) (providing that a
(continued...)

unreimbursed payments to Travelers, sees no justification for such relief.  Response, ¶
35

As the cased cited by the Debtors hold, the decision to grant retroactive rejection
of a lease or contract is dictated by equitable considerations.  *See e.g.*, *Thinking
Machines Corp. v. Mellon Financial Services Corp. (In re Thinking Machines Corp.)*, 67
F.3d 1021, 1028 (1st Cir.1995); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827
(Bankr.N.D.Tex.1996) (granting retroactive rejection as function of fairness); *Constant
Limited Partnership v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 39
(S.D.N.Y.1995) (nunc pro tunc rejection warranted to avoid penalizing debtor for
creditor's unnecessary delay); *In re Garfinckels, Inc.*, 118 B.R. 154 (Bankr.D.D.C.1990)
(nunc pro tunc rejection warranted where no prejudice posed to creditor).

While the equities do not appear to weigh against McClatchy, there is no obvious
prejudice to it in approving rejection retroactively.  McClatchy intends to move for
allowance of an administrative claim.  Response, ¶¶ 25, 35.  Its stated basis for such
relief is its having made a substantial contribution to the case.  *Id.* ¶ 26.  Ordering
*retroactive*—as opposed to *immediate*—rejection would not affect its entitlement to first
priority status on that basis.  Accordingly, rejection of the remaining agreements of the
APA shall be effective as of October 20, 2009.

---

[6](...continued)
claim arising from the rejection of an executory contract shall be allowed as if such claim had
arisen before the date of the filing of the petition)  But where the counterparty to the rejected
contract has rendered some substantial benefit to the bankruptcy estate, such claim may be
entitled to priority as an administrative expense.  *See* 11 U.S.C. § 503(b)(3)(D) (allowing first
priority administrative claim for "substantial contribution" to the case)

*Summary*

The Debtors' Motion to Reject the Asset Purchase Agreement and Related Agreements with the McClatchy Company is granted.  The Courts finds that the agreement regarding pre-sale workers compensation claims is executory and may be rejected as an exercise of the Debtors' business judgment.  Finally, nothing in this ruling precludes or otherwise affects McClatchy's right to seek allowance of its rejection claim as an administrative expense.

An appropriate Order follows.

By the Court:

_____

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>January 13, 2010</u>