## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                      : CHAPTER 11
                                           :
PHILADELPHIA NEWSPAPERS, LLC., ET AL.,     :
                                           :
              DEBTOR(S)                    : BANKRUPTCY NO. 09-11204 SR
                                           :
_____  : JOINTLY ADMINISTERED

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

Before the Court is an application (the "Application") filed by the Newspaper Guild of Greater Philadelphia Local 10 (the "Guild"), on behalf of Stephen A. Smith ("Smith"), a journalist, for an Order allowing and compelling the payment of an administrative expense claim, pursuant to 11 U.S.C. § 503(b)(1)(A)(ii). The Debtors filed an objection ("Objection") to the Application and a hearing was held on the matter. At the hearing, the parties presented oral argument. Upon consideration of the matter, the Court denies the Application.

## Background[1]

Prior to January 25, 2008, Smith was employed as a sports columnist with the Philadelphia Inquirer. Smith's employment was governed by a collective bargaining agreement (the "CBA") which existed between the Guild and Philadelphia Newspapers,

---

[1] In the Objection, Debtors did not dispute the factual allegations which the Guild alleged in the Application but, rather, raised legal arguments to the Application.

LLC (the "Newspaper").

On January 25, 2008, Smith's employment was terminated. *Application ¶2.* The Guild filed a grievance on his behalf pursuant to the grievance-arbitration procedure contained in the CBA. *Id.* The Guild alleged that Smith's termination violated the CBA because the termination was not for "good and reasonable cause." *Id.* Because the parties were unable to resolve the matter, it was referred to an arbitrator for a decision. *Id. ¶3.*

While the aforementioned arbitration was pending, Debtors, which own and operate the Philadelphia Inquirer, commenced their bankruptcy cases under Chapter 11 of the Bankruptcy Code. *See Declaration of Richard R. Thayer, Executive Vice President, Finance of the Debtors in Support of First Day Motions at ¶7; see also Bankruptcy Case No. 09-11204, Docket Entry No. 1.* The filings occurred on February 22, 2009.

On October 27, 2009, the arbitrator entered an award (the "Award"). *See Award, dated Oct 27, 2009 (attached as Exhibit 1 to Application).* Neither Smith nor Debtors contested the Award.

Pursuant to the Award, the Newspaper is/was obligated to, inter alia: (i) "reinstate Mr. Smith within the next fifteen (15) days to his position"; and (ii) continue his salary at $225,000.00. *Id.* The Award also directed the Newspaper to continue Smith's health and dental benefits through the Guild "as accorded a full-time employee." *Id.* Insofar as Smith's claim for back-pay, the Award stated:

> [Mr. Smith] was demoted without "good and reasonable

2

> cause" on or about August 21, 2007.  Had Mr. Smith
> accepted this reassignment, he would have earned
> approximately $110,000 per year.  It is also clear, as noted
> in the August 31, 2009 Opinion and Interim Award in this
> case, that Mr. Smith failed to declare his intentions
> regarding returning to work.  Therefore his claim for back
> pay will be mitigated to the extent that the Inquirer shall
> compensate him in the amount of $100,000 in terms of back
> pay.

*Id.*  Thus, the arbitrator reduced Smith's claim for back wages to $100,000 based on

mitigating circumstances.

Based on the Award, the Guild argues that Smith is entitled to, and should be

granted, an allowed administrative claim, pursuant to § 503(b)(1)(A)(ii), for $44,303.37

which consists of $25,726.50 allegedly owed for post-petition wages and $18,576.87 for

post-petition healthcare premiums which he paid.  *Application ¶8; Transcript, dated*

*May 18, 2010 (hereinafter referred to as "Tr.") at 4* (representation by counsel for the

Guild that Smith was amending/reducing his claim for health care benefits from

$23,400, as stated in its Application, to $18,576.87 "due to the fact that that was the

post petition amount that [Smith] paid in his healthcare premiums.").[2]  The Debtors

contend that Smith is not entitled to an administrative claim for these amounts

because: (i) his back pay award of $100,000 covers a period of time during which he

---

[2]  In their Objection, Debtors argued that Smith had not provided any
documentation to support his claim for healthcare premiums.  However, during the
hearing on this matter, the Guild's counsel represented that she had given "opposing
counsel a copy of the actual ... withdrawals from Mr. Smith's account paying his
premium amounts."  *Tr. at 3.*  Based on this documentation, Debtors' counsel conceded
that the amount ($18,576.87) which Smith paid post-petition for healthcare premiums
is not in dispute.  *Tr. at 14.*  Consequently, Debtors' argument about the lack of
documentation is moot.

rendered no service to the Debtors;[3] and (ii) he was similarly not rendering any service

to the Debtors when his healthcare premiums were incurred. *Objection at ¶¶6-9, 11-*

*13.*

## Discussion

Section 507 of the Code "sets forth 10 categories of claims that are entitled to

priority in bankruptcy cases." *4 Collier on Bankruptcy ¶507.01, at 507-0 (16th ed.)*

Based on §507(a)(2),[4] administrative expenses allowed under §503(b) have "priority"

---

[3]  At the hearing on the Motion, Debtors' counsel represented to the Court that
Debtors have paid Smith $10,950 of his Award pursuant to §507(a)(4). *Tr. at 9.*
Debtors contend that the rest of the Award should be treated as a general unsecured
claim.

[4]  Administrative expenses allowed under §503(b) are "second" in the priority
scheme set forth in §507.  Section 507 provides, in pertinent part:

> (a) The following expenses and claims have priority in the
> following order:

> (1) First:

> (A) Allowed unsecured claims for
> domestic support obligations that, as of the
> date of the filing of the petition in a case under
> this title, are owed to or recoverable by a
> spouse, former spouse, or child of the debtor,
> or such child's parent, legal guardian, or
> responsible relative ….

> (B) Subject to claims under
> subparagraph (A), allowed unsecured claims
> for domestic support obligations that, as of the
> date of the filing of the petition, are assigned
> by a spouse, former spouse, child of the
> debtor, or such child's parent, legal guardian,

(continued…)

4

over most other claims "when assets of the estate are distributed to creditors."[5] *Kaler v.*

*Bala In re Racing Services, Inc.), 571 F.3d 729, 731 (8th Cir. 2009). See also National*

*Union Fire Insurance Co. v. VP Buildings, Inc. 606  F.3d 835, 837-38 (10th Cir. 2010)*

*(quoting Hartford Underwriters, Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 5*

*(2000))* (noting that administrative claims under §503(b) "'are, as a rule, entitled to

priority over prepetition unsecured claims[.]'" )*; Park National Bank v. University Centre*

*Hotel, Inc., 2007 WL 604936, at * 5 (N.D. Fla. Feb. 22, 2007)* ("[A]dministrative claims

are accorded the first level of priority and are paid in full before claims in a lower

---

> or responsible relative to a governmental unit
> …
>
> (C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.
>
> (2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. §507(a)(1)(-(2).

[5] When a Chapter 11 case is converted to a Chapter 7 case, "Chapter 7 administrative claims receive priority over Chapter 11 administrative claims." *Ungaretti & Harris, LLP v. Steinberg (In re Resource Technology Corporation), 2008 WL 4696073, at *3 (N. D. Ill. Oct. 20, 2008) (citing 11 U.S.C. § 726(b)).*

category.").

The parties' dispute in the instant matter focuses specifically on §503(b)(1)(A)(ii) which was added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *In re Powermate Holding Corp., 394 B.R. 765, 772 (Bankr. D. Del. 2008).* Before BAPCPA, §503(b)(1)(A) did not have any subsections. Instead, the provision stated, in its entirety:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C. §503(b)(1)(A) (2004). With the enactment of BAPCPA, subsection (1)(A) was divided into two subsections, namely subsection (i), wherein the text from the former provision was kept intact, and subsection (ii), which was newly added (not having existed before).

Section 503(b)(1)(A) now provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than the claims allowed under section 502(f) of this title, including--

> (1)(A) the actual, necessary costs and expenses of preserving the estate including--

> > (i) wages, salaries, and commissions for services rendered after the commencement of the case; and

> > (ii) wages and benefits awarded

6

> pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

11 U.S.C. § 503(b)(1)(A) (2010).

## Meaning of "the actual, necessary costs and expenses of preserving the estate" in §503(b)(1)(A)

In *Pennsylvania Department of Environmental Resources v. Tri-State Clinical Laboratories, Inc., 178 F.3d 685 (3d Cir. 1999),* the Third Circuit was called upon to interpret the meaning of §503(b)(1)(A).  In doing so, it stated that "for a claim to be given priority as an administrative expense under this provision of the Code, it must be (1) a 'cost' or 'expense' that is (2) 'actual' and 'necessary' to (3) 'preserving the estate.'"  *Id. at 689.*   In construing the meaning of these words, the Third Circuit relied upon the Supreme Court's decision in *Reading Company v. Brown, 391 U.S. 471 (1968).*[6]  In

---

[6]  In *Reading,* the debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Act.  *391 U.S. at 473.*  A receiver was appointed and authorized to continue conducting the debtor's business which "consisted principally of leasing" an industrial building.  *Id.* The building was subsequently destroyed by a fire which spread to adjoining properties.  *Id.*  The Supreme Court held that a tort judgment which

(continued...)

*Reading,* the Supreme Court observed that "actual and necessary costs" are those

"costs ordinarily incident to operation of a business" but are " not [ ] limited to costs

without which rehabilitation would be impossible." *Id. at 483.* With regard to the

words "preserving the estate," the Supreme Court construed the words as referring to

the "larger objective" that is common to reorganization cases, namely that of

"operating the debtor's business with a view to rehabilitating it.'" *Id. at 475.*

Bearing this discussion in mind, this Court shall now turn its attention to the

provision at issue, namely subsection (ii) of §503(b)(1)(A), focusing first on its

legislative history (or, more specifically, the lack thereof) and then on the case law

---

[6](...continued)
compensated one of the adjacent property owners for damage caused to its property as
a result of the receiver's negligence was entitled to priority as an administrative
expense even though, as the Third Circuit noted in *Tri-State Clinical Laboratories,* " the
tort judgment "was not technically a cost of preserving the estate." *Tri-State Clinical
Laboratories, 178 F.3d at 690.* The Supreme Court based its decision, according to the
Third Circuit, on "the considerations of fairness and practicality which underlie the
purposes of the bankruptcy laws." *Id. at 691.*

In *Tri-State Clinical Laboratories*, Pennsylvania's Department of Environmental
Research (the "DER") argued that a $20,000 fine which was imposed upon the debtor
for conduct that occurred after it filed for bankruptcy was entitled to priority status as
an administrative expense under §503(b)(1)(A). *Id. at 688.* The Third Circuit rejected
the argument. In so ruling, the Third Circuit distinguished the Supreme Court's
decision in *Reading.* The Third Circuit held that the $20,000 fine against the debtor
was a criminal fine, the purpose of which was deterrence, retribution and punishment
and, as such, was different from damages awarded as compensation for a debtor's
conduct. The Third Circuit concluded that non-compensatory fines were not intended to
be treated as administrative expenses under §503(b)(1).

In *Reading* and *Tri-State Clinical Laboratories* , compensatory or actual damages
were treated differently from non-compensatory fines under §503(b)(1)(A). The wages
and benefits awarded to Smith as "back pay" are more akin to compensatory damages
than non-compensatory fines.

8

construing it.

**Legislative History on §503(b)(1)(A)(ii)**

The legislative history on the amendment to §503(b)(1)(A) is sparse.  *In re*

*Powermate Holding Corp., 394 B.R. 765, 777-78 & n.73 (Bankr. D. Del. 2008)*

(observing that the legislative history of §503(b)(1)(A)(ii) is "nearly silent" and that the

legislative history which does exist "is more of a restatement of the language [of the

provision] than an explanation [of it].")*; see also* Thomas Salerno & Jordan Kroop,

Bankruptcy Litigation and Practice: A Practitioner's Guide §4.08 n.323 (current through

2010-1 Supplement); (observing that there is "utter lack of legislative history" on

§503(b)(1)(A)(ii)).   The bankruptcy court in *In re First Magnus Financial Corporation,*

*390 B.R. 667 (Bankr. D. Az. 2008),* noted that the "legislative history" for

§503(b)(1)(A)(ii) consists of "only one comment, which, for the most part simply

paraphrases the statutory language[.]" *Id. at 674.*  The bankruptcy court then quoted

the legislative history which states:

> Section 329 amends Bankruptcy Code section 503(b)(1)(A)
> to accord administrative expense status to certain back pay
> awards. This provision applies to a back pay award
> attributable to any period of time occurring postpetition as a
> result of a violation of Federal or state law by the debtor
> pursuant to an action brought in a court or before the
> National Labor Relations Board, providing the bankruptcy
> court determines that the award will not substantially
> increase the probability of layoff or termination of current
> employees or of nonpayment of domestic support
> obligations.

*390 B.R. at 674-75 (citing  H.R. Rep. No. 31, 109th Cong., 1st Sess. 329 (2005), U.S.*

*Code Cong. & Admin. News 2005, p. 88).*  In the absence of legislative history on the

provision in dispute, there is no record revealing Congress' purpose in amending

10

§503(b)(1) to include it. *Id. at 675 (observing that the one comment in the legislative history for §503(b)(1)(A)(ii) "is not helpful in fully explaining Congress' intent, nor in determining how this subsection was supposed to work.").*

**Case Law on §503(b)(1)(A)(ii)**

Based on this Court's research, there are only eight decisions to date citing §503(b)(1)(A)(ii).[7] In five of them, the courts only mention the provision in passing and do not interpret or apply it. *See Sanchez v. Northwest Airlines, Inc., __ F. Supp.2d ___, 2010 WL 2090083, at \*6 n.9 (D. Minn. May 21, 2010); Scoggin v. Weinman (In re Adam Aircraft Industries, Inc.), 2010 WL 717841, at \*1 (D. Colo. Feb. 23, 2010); Kettell v. Bill Heard Enterprises, Inc. (In re Bill Heard Enterprises, Inc.), 400 B.R. 795 (Bankr. N.D. Ala. 2009); In re Yellowstone Mountain Club, LLC., 2009 WL 3790207, at \*5 (Bankr. Mont. Nov. 12, 2009); Johnson v. First NLC Financial Services (In re First Financial Services, LLC), 410 B.R. 726 (Bankr. S.D. Fla. 2008).* In the three decisions wherein the courts discuss the provision, the claims at issue arise under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.. See Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.), 403 B.R. 659 (D. Ariz. 2009); In re Powermate Holding Corp., 394 B.R. 765 (Bankr. D. Del. Oct. 10, 2008); In re First Magnus Financial Corp., 390 B.R. 667 (Bankr. D. Ariz. 2008), aff'd, Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.), 403*

---

[7] At the hearing on the Motion, the Guild's counsel aptly observed that "there haven't been that many cases addressing this relatively new provision of the bankruptcy code." *Tr. at 5.*

11

*B.R. 659 (D. Ariz. 2009).* Two of the decisions arise out of the bankruptcy case of First Magnus Financial Corporation.

In *Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.)*, the debtor fired the majority of its employees five days before filing for relief under Chapter 11 of the Code. The appellants, who were a group of the fired employees, sought administrative expense priority for damages under the WARN Act, arguing that §503(b)(1)(A)(ii) authorizes such action. *403 B.R. at 662, 664-65.* The district court rejected the argument and affirmed the bankruptcy court's ruling that the employees were not entitled to have their WARN Act damages treated as administrative expenses under §503(b)(1)(A).[8] In so ruling, the district court stated:

> Section 503(b)(1)(A) unequivocally states it applies to "the actual, necessary costs and expenses of preserving the estate." Appellants' WARN damages are not necessary to maintain the debtor as a going concern, nor are they necessary to preserve the bankruptcy estate during the liquidation process. Accepting Appellants' argument would be inconsistent with the meaning and purpose of the bankruptcy framework.

*Id.* The district court concluded its discussion by stating that "[t]he Bankruptcy Court's thorough and well-reasoned opinion below is affirmed." *Id.*

In the bankruptcy court's decision in the *Binson/First Magnus Financial*

---

[8] In *Binson*, both parties agreed that "any allowed pre-petition back-pay claims" were "entitled to fourth and/or fifth priority distribution to unsecured claims, subject to a cap of $10,950 each, pursuant to §507(a)(4) and (a)(5)." *In re First Magnus Financial Corp., 390 B.R. 667, 671 (Bankr. D. Ariz. 2008), aff'd, Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.), 403 B.R. 659 (D. Ariz. 2009).* As the Court noted above, Debtors' counsel advised the Court that they have already paid Smith $10,950 of the Award pursuant to §507(a)(4).

*Corporation* case, the court focused on the "plain language" of §503(b)(1)(A).  The

bankruptcy court found it significant that subsections (i) and (ii) of §503(b)(1)(A) are

connected by the word "and."  *390 B.R. at 676-77.*  Based on its application of the word

"and" to the statutory provision, the bankruptcy court concluded that both parts of

§503(b)(1)(A)  must be satisfied for the provision to apply.  *Id. at 677.* The bankruptcy

court explained its reasoning as follows:

> The language of § 503(b)(1)(A), as amended, is susceptible
> to application of the "plain language" rule, because it
> appears to clearly apply only to those persons who were
> employed in the post-petition phase of a bankruptcy case.
>
> The Bankruptcy Code provides a "nonexhaustive" list of
> allowable administrative expense.  In re Kadjevich, 220 F.3d
> 1016, 1019 (9th Cir.2000).  It is clear, first, however, that
> § 503(b)(1)(A) expenses must be incurred post-petition.
>
> The first and second clauses of § 503(b)(1)(A) are joined by
> the word "and." 11 U.S.C. § 503(b)(1)(A)(i) and (ii). "Usually
> words of a statute must be construed in accordance with
> their ordinary and common meaning unless they have
> acquired technical meaning or unless a definite meaning is
> apparent or indicated by the context of the words." 2A
> Sutherland Statutes and Statutory Construction § 47:27
> (Thomson Reuters/West, 7th ed. 2008). "And" is a common
> term in English, which means "together or along with: as
> well as-used to connect words, phrases or clauses that have
> the same grammatical function in a construction." Webster's
> II New Riverside University Dictionary (1984).
>
> Interestingly, the leading treatise on statutory construction
> states:
>
> > Where two or more requirements are provided
> > in a section and it is the legislative intent that
> > all of the requirements must be fulfilled in
> > order to comply with the statute, the
> > conjunctive "and" should be used. Statutory

13

> phrases separated by the word "and" are
> usually to be interpreted in the conjunctive.

1A Sutherland, supra, § 21:14 (emphasis added).

* * *

Therefore, applying the connector, "and," to each part of §
503(b)(1)(A)(i) and (ii) would require that both parts of the
subsections must exist in order for a claimant to be entitled
to an administrative expense.  Such an interpretation would
be consistent with longstanding law that only debts that
arise postpetition can be treated as administrative expenses.
In re Ybarra, 424 F.3d 1018, 1025-26 (9th Cir.2005); Palau
Corp., 18 F.3d at 751 .

Here, the only post-petition attribute of the WARN claims is
merely mathematical, that being the calculation of the
amount of liability. Since it is an undisputed fact that these
WARN Act employees had been terminated prior to the filing
of the instant chapter 11 case, they are unable to show that
they provided "services rendered after the commencement
of the case …." as required by the first clause of 11 U.S.C. §
503(b)(1)(A)(i). Therefore, they cannot show entitlement to
administrative claimant status, since the entire statute, read
together, requires, at the least, some attribute of
post-petition services. This interpretation best conforms to
traditional notions of what constitutes an administrative
expense, and otherwise fits within the whole framework of
classification of claims.

This interpretation further conforms to the notion that a
liquidating chapter 11 trustee or debtor-in-possession "does
not succeed to the notice obligations," and thus the liability
for any noncompliance therewith, of the prepetition
operating Debtor.

*390 B.R. at 676-677* (some citations omitted).   Thus, the bankruptcy court determined

that the requirements of both sections of §503(b)(1)(A) must be satisfied in order for

priority status under the provision to be applicable.   Since the employees were fired

pre-petition, they did not render any service to the debtor post-petition and, therefore, were not eligible to have any WARN Act damages treated as an administrative expense under §503(b)(1)(A).[9]

The only other decision discussing §503(b)(1)(A)(ii) is *In re Powermate Holding Corp.*, which was decided by the bankruptcy court in Delaware. The plaintiffs in this case worked for Powermate Holding Corp. ("Powermate") *394 B.R. at 768*. Their jobs were terminated before Powermate filed for bankruptcy. *Id.* The plaintiffs contended that their damages under the WARN Act were entitled to administrative expense priority status under §503(b)(1)(A)(ii). *Id.*

The bankruptcy court in *Powermate* rejected the *First Magnus* court's interpretation of the word "and" between subsections (i) and (ii) as meaning that the two provisions have to be read together. Instead, the *Powermate* court reasoned that the use of the word "and" in relation to the two subsections of §503(b)(1)(A) means that subsections (i) and (ii) are "categories within a particular subset of allowable administrative expenses," namely the " 'actual necessary costs and expenses of preserving the estate.'" *Id. at 774.* The *Powermate* court noted that its interpretation of §503(b)(1)(A) "relies on the word 'including' which appears before subsection (i)." *Id.*

---

[9] Interestingly, in *In re United Healthcare System, Inc., 200 F.3d 170 (3d Cir. 1999),* the Third Circuit held that the debtor-hospital did not constitute an "employer" within the meaning of the WARN Act when it filed for bankruptcy because it "ceased operating its business as a going concern and was simply preparing for liquidation" and, consequently, that the employees who were terminated after the debtor-hospital filed for bankruptcy were not entitled to "back pay" wages under the WARN Act.

The *Powermate* court thereafter applied its interpretation of §503(b)(1)(A)(ii) to

the matter before it.  The court concluded that the relevant question in determining

whether WARN Act damages fit within §503(b)(1)(A)(ii) is when the claim under the

WARN Act accrues or vests.  In reaching this conclusion, the court reasoned as follows:

> An initial reaction to reading [§503(b)(1)(A)(ii)] is that the
> section is unclear. This is because the section describes two
> different times: the period to which back pay is attributable
> and the time of the occurrence of the unlawful conduct
> and/or when the services were rendered.  This confusion is
> further complicated by the fact that the priority of a given
> claim is dependant on when these two times correspond
> with the timing of the filing of the chapter 11 petition. A
> closer reading, however, reveals that the only relevant
> consideration is the former time, the time to which the back
> pay is attributable which is when the rights or claims vest or
> accrue, and how that time relates to the petition date. If a
> claim vests pre-petition, then the back pay is attributable to
> the time occurring prior to the commencement of the case
> and therefore it is not an administrative expense claim. If,
> on the other hand, a claim vests post-petition, the back pay
> is attributable to the time occurring after the
> commencement of the case and therefore it is an
> administrative expense claim. When the unlawful conduct
> occurred and/or services were rendered does not affect this
> determination.  Further, the payment due date is not
> controlling because the accrual may occur before or after
> the payment date.

*Id. at 774-75* (footnotes omitted).  Having concluded that the pivotal question before it

was when did the plaintiffs' WARN Act damages vest, the Court reviewed the

connection between WARN Act damages and severance pay.  It observed that there are

two types of severance pay.  One type is "pay at termination in lieu of notice"; the

other is "pay at termination based on length of service."  The court noted that "pay at

termination in lieu of notice" vests at the time of termination because it is based solely

16

on lack of notice. *Id. at 774-75.* "Therefore," the court concluded,"the entirety of [a claim for pay at termination in lieu of notice] becomes an administrative expense claim in a post petition discharge [while,] conversely, a claim for severance pay for a pre-petition termination does not receive administrative expense status." *Id. at 776-76.* Since Powermate had terminated its employees prior to filing for bankruptcy, the *Powermate* court concluded, based on its interpretation of §503(b)(1)(A)(ii), that any damages awarded to the plaintiff under the WARN Act were not entitled to administrative priority status and would be administered, instead, under §507(a)(4-5). *Id. at 777.*

**Analysis of the Case Law on §503(b)(1)(A)(ii)**

### (A) Meaning of "and" Between Subsections (i) and (ii) of §503(b)(1)(A)

This Court is unpersuaded by the *First Magnus* courts' interpretation of the meaning of the word "and" between subsections (i) and (ii) of §503(b)(1)(A) and, instead, adopts the *Powermate* court's conclusion that the "and" between the subsections means that the subsections are subsets of the category of allowable administrative expenses identified in §503(b)(1)(A).  The manner in which the *First Magnus* courts interprets Congress' use of the word "and" between the two subsections renders the language of subsection (ii) internally inconsistent.

This Court finds further support for the *Powermate* court's interpretation of the meaning of the word "and" between subsections (i) and (ii) of §503(b)(1)(A) in the fact that Congress used the same word (*i.e.,* "and") to string together the nine

subcategories of administrative expenses listed under §503(b).  The nine categories are independent of each other just like subsections (i) and (ii) of §503(b)(1)(A).

## B.    Disagreement with *Powermate* Court's Application of §503(b)(1)(A)(ii)

While this Court adopts the *Powermate* court's interpretation of the meaning of the word "and" between subsections (i) and (ii) of §503(b)(1)(A), it does not adopt the *Powermate* court's interpretation of the amendment in its entirety.  More specifically, this Court does not agree with the *Powermate* court's conclusion that the relevant time consideration for purposes of §503(b)(1)(A)(ii) is "when the rights or claims [to back pay] vest or accrue."  *394 B.R. at 775.*  Had Congress intended to condition subsection (ii) on when a right or claim for back pay "vested" or "accrued," it could have said so.  It did not and, for that reason, this Court will not impose that requirement on this new subsection to §503(b)(1)(A).

Based on the plain language of §503(b)(1)(A)(ii) which, as *First Magnus* and *Powermate* courts concluded, is unambiguous, Congress has allowed, under certain circumstances, for wages and benefits to be treated as "actual, necessary costs and expenses of preserving the estate" under §503(b)(1)(A) "*without regard . . . to whether any services were rendered.*"  11 U.S.C. §503(b)(1)(A)(ii) (italics added).  The new subsection could not be more plain in its language and given that there is no legislative history upon which to base a conclusion that Congress did not mean what it said, the provision must be applied in accordance with its language.  *See Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)* ("[T]he

18

starting point for interpreting a statute is the language of the statute itself" and

"[a]bsent a clearly expressed legislative intention to the contrary, that language must

ordinarily be regarded as conclusive."); *In re Meyer, 355 B.R. 837 (Bankr. D.N.M. 2006)*

*(quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)(citations*

*omitted) and citing  Lamie v. United States Trustee, 540 U.S. 526, 542(2004))*

(observing that the Supreme Court has instructed courts that they must "'presume that

a legislature says in a statute what it means and means in a statute what it says'" and

that "[i]f it then turns out that Congress did not write what it meant to say, it must be

Congress that rewrites the statute to fix the mistake.'").

Admittedly, the kind of wages that have previously been recognized as allowed,

administrative expenses under §503(b)(1)(A) were only wages that were earned for

services rendered post-petition.[10]  *See e.g., Pennsylvania Department of Environmental*

---

[10]  Section 503(b) of the Code "preserves the debtor's estate during the pendency of bankruptcy proceedings by establishing a category of 'allowed administrative expenses,' which includes 'the actual, necessary costs and expenses of preserving the estate' while in bankruptcy." *Goody's Family Clothing, Inc. v. Mountaineer Property Co., II, LLC. (In re Goody's Family Clothing, Inc.), 401 B.R. 656, 662 (D. Del. 2009) (citing* 11 U.S.C. §503(b)), *affd, 2010 WL 2671929 (3d Cir. June 29, 2010).  See also Peters v. Pikes Peak Musicians Association, 462 F.3d 1265, 1268 (10th Cir. 2006)* (stating that, pursuant to § 503(b), costs that are incurred in "preservation of a bankrupt business, such as rent or compensation for ongoing operations, are payable as administrative expenses." ). In *National Union Fire Insurance Co. v. VP Buildings, Inc. 606 F.3d 835, 838(10th Cir. June 4, 2010) (quoting In re United Trucking Service, Inc., 851 F.2d 159, 161 (6th Cir. 1988))*, the Tenth Circuit explained that the purpose of providing priority status to these types of expenses "'is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services.'" *See also In re Powermate Holding Corp., 394 B.R. 765, 772 (Bankr. D. Del. 2008)* ("The rationale for providing priority treatment [to administrative claims] is that it benefits all creditors by encouraging

(continued...)

*Resources v. Tri-State Clinical Laboratories, Inc.*, 178 F.3d 685, *689-690* (3d Cir. 1999);

*In re Roth American, Inc.*, *975 F.2d 949, 958 (3d Cir. 1992)*. However, the fact that

§503(b)(1)(A)(ii) specifically states that wages and benefits are to be treated as

administrative expenses thereunder without regard to "whether any services were

rendered" cannot be ignored. The inclusion of this language in subsection (ii) is in

stark contrast to the language in subsection (i) referring to "wages, salaries, and

commissions *for services rendered after the commencement of the case*[.]" 11 U.S.C.

§503(b)(1)(a)(i) (italics added).

Consequently, if back pay is awarded for any period of time "attributable to any

time occurring after commencement of a case" <u>and</u> the back pay meets the other

requirements listed in subsection (ii), then this Court holds that back pay constitutes an

allowed, administrative expense under §503(b)(1)(A) without regard to whether

services have been rendered. If Congress did not intend this result when it enacted

§503(b)(1)(A)(ii), then it is up to Congress to re-word the statute.

---

[10](...continued)
lenders and others to continue or commence doing business with the debtor.").

**The Requirements of §503(b)(1)(A)(ii)**

Significantly, Congress has set forth very specific requirements which must be met in order for §503(b)(1)(A)(ii) to apply.  Based on the plain and straightforward language of the provision, wages and benefits constitute actual, necessary costs and expenses of preserving the estate only if they meet the following four requirements:

> (1) they were awarded pursuant to a judicial proceeding or a proceeding of the National Labor;
>
> (2) they were awarded as back pay attributable to a period of time occurring after commencement of the debtor's bankruptcy case;
>
> (3) they were awarded as a result of a violation of Federal or State law by the debtor; and
>
> (4) the court determines that payment of the wages and benefits will "not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the" debtor's bankruptcy case.

11 U.S.C. §503(b)(1)(A)(ii).  The Guild, as the party seeking the payment of an administrative expense claim on Smith's behalf, "'has the burden of proving that his claim constitutes an administrative expense.'"  *National Union Fire Insurance Co. v. VP Buildings, Inc., 606 F.3d 835, (6th Cir. 2010) (quoting McMillan v. LTV Steel, Inc., 555 F.3d 218, 226 (6th Cir. 2009))*.

> **A.   Whether the wages and benefits for Smith were awarded pursuant to a judicial proceeding?**

Section 503(b)(1)(A)(ii) only applies to wages and benefits "awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board[.]"  11

21

U.S.C. §503(b)(1)(A)(ii).[11]  The Guild explained at the hearing on this matter that, if the

Debtors want to make an issue out of this requirement, then the Guild will file a judicial

proceeding to have the Award enforced.  *Tr. at 6-8.*

Section 301 of the Federal Labor Relations Act "authorizes '[s]uits for violation of

contracts between an employer and a labor organization representing employees in an

industry affecting commerce[.]'"  *Burns V. Salem Tube, Inc., 2010 WL 2075913, at *2

n.1  (3rd Cir. May 24, 2010* ).  An action pursuant to §301 is the "appropriate means" to

enforce an arbitration award issued in a procedure mandated by a collective bargaining

agreement.  *Local No. 1, International Union of Elevator Constructors, AFL-CIO v. Lift-

Tech Elevator Services, LLC., 2009 WL 2174993, at *2 (D.N.J. July 21, 2009)* ; *Williams

v. United States Steel*, 877 F. Supp. 1240, 1243 (N.D. Ind.), *aff'd, 70 F.3d 944 (7th Cir.

1995)*.  Therefore, the Guild could file a judicial proceeding pursuant to §301 to enforce

the Award.  While it has not done so, it could satisfy this requirement if necessary.

**B.  Whether the wages and benefits for Smith
were awarded as back pay attributable to a
period of time occurring after commencement
of the Debtors' bankruptcy cases?**

The amount which Smith paid for healthcare premiums post-petition is obviously

attributable to the period of time occurring after the Debtors filed for bankruptcy.

However, the parties have different positions on how the $100,000 which Smith was

awarded for back-pay should be allocated.  The Guild contends that the $100,000

should be apportioned over the entire time period when he was not working.

---

[11]  Whether an arbitration constitutes a "judicial proceeding" is an issue which
the Court finds is unnecessary to resolve to rule upon the Motion.

*Application* ¶6.  The Debtors, on the other hand, argue that "[a]pplying the amount of

the arbitration award to Mr. Smith's salary from the date of his termination forward,

none of the back pay awarded to Mr. Smith extends to the post-petition period."

Objection at ¶11.  Significantly, the Award provides no insight into how the $100,000

should be allocated.   However, the Court finds it unnecessary to resolve the parties'

dispute on how the $100,000 should be allocated because, even accepting the Guild's

position on the issue, the Guild's Application must be denied because it cannot satisfy

the third requirement of §503(b)(1)(A)(ii).

### C.    Whether the wages and benefits for Smith were awarded as a result of a violation of federal or state law by the Debtors?

The third requirement in §503(b)(1)(A)(ii) is that the wages and benefits

awarded as back pay must have been awarded "as a result of a violation of Federal or

State law by the debtor[.]"  11 U.S.C. §503(b)(1)(A)(ii).  There is nothing in the record

before this Court to support the conclusion that the Award was based on a violation by

the Debtors of a federal or state law.  To the contrary, the undisputed facts reveal that

the Award was issued because the Newspaper breached the CBA.  *See Award, dated*

*Oct 27, 2009 (attached as Exhibit 1 to Application).*  A collective bargaining agreement

is not a federal or state law but a contract between the parties thereto.  *See W.R.*

*Grace and Company v. Local Union 759, International Union of the United Rubber,*

*Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 764 (1983)* (referring to

a collective bargaining agreement as a contract); *Service Employees International*

*Union Local 36, AFL-CIO v. City Cleaning Company, Inc., 982 F.2d 89, 95* (3d Cir.

1992)("It is axiomatic that a collective bargaining agreement is a contract between the union and the employer, and a failure to comply with the agreement should be treated as a breach of contract.").  Consequently, the wages and benefits which Debtors owe to Smith as back pay were not awarded as the result of a violation of federal or state law but, rather, a breach of the parties' agreement, the CBA.  Therefore, the Guild cannot satisfy this requirement of §503(b)(1)(A)(ii) and, consequently, its Application must be denied.  **Summary**

The Guild's application shall be denied because the wages and benefits which Smith was awarded through arbitration under the CBA were not the "result of a violation of Federal or State law by the debtor" as required for priority as an administrative expense under 11 U.S.C. §503(b)(1)(A)(ii).  An Order to this effect shall be issued.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>July 15, 2010</u>