IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| | : | Case No. 09-11204 (SR) |
| PHILADELPHIA NEWSPAPERS LLC, *et al.* | : | |
| | : | (Jointly Administered) |
| | : | |
| *Debtors*. | : | |

**MOTION OF THE PHILADELPHIA INQUIRER, PBC, TO REOPEN, TO ENFORCE THE CONFIRMATION ORDER, PLAN, AND ASSET PURCHASE AGREEMENT, AND TO BAR VINCENT GAUDINI, JR. FROM PROSECUTING A STATE COURT ACTION**

The Philadelphia Inquirer, PBC ("PI PBC"), by and through its undersigned counsel, respectfully moves this Court for the entry of an order reopening this bankruptcy case and enforcing (a) the provisions of the Order Confirming The Fifth Amended Joint Chapter 11 Plan As Of September 24, 2010 ("Confirmation Order"), (b) the provisions of the Fifth Amended Chapter 11 Plan As Of September 24, 2010 ("Plan") filed by Philadelphia Newspapers, LLC, *et al*. ("Debtors"[1]), and (c) the terms of the Asset Purchase Agreement ("APA") approved by this Court.  *See.* Ex. 1 (Confirmation Order, Docket No. 2620); Ex. 2 (Plan, Docket No. 2620-1); Ex. 3 (Order with APA as Exhibit A, Docket No. 2619).  More specifically, based on the Confirmation Order, the Plan, and the APA, PI PBC seeks an order enjoining Vincent Gaudini, Jr., from further prosecuting a pending civil action against PI PBC.  *See* Ex. 4 (Third Amended Complaint).

Mr. Gaudini sued PI PBC in February 2021 in the Court of Common Pleas of Philadelphia County, Pennsylvania, based on a March 5, **2010** article, claiming that the article

---

[1] The "Debtors" are: Philadelphia Newspapers, LLC, PMH Acquisition, LLC, Broad Street Video, LLC, Philadelphia Direct, LLC, Philly Online, LLC, PMH Holdings, LLC, Broad Street Publishing, LLC, Philadelphia Media, LLC and Philadelphia Media Holdings, LLC.

#13851858 v9

falsely accused him of extortion. PI PBC is the current form of the entity that, in October 2010, purchased certain assets from the Debtors Philadelphia Newspapers LLC, et a.l—including *The Philadelphia Inquirer*, the *Philadelphia Daily News*, and the newspapers' website. The terms of the APA, Confirmation Order, and Plan made clear that the purchaser did not assume any liability for claims based on articles published before October 2010, released the purchaser from such claims, and enjoined such claims against the purchaser. Indeed, in light on these provisions, this Court entered an order in June 2011 requiring the dismissal with prejudice of two state court defamation lawsuits based on pre-October 2010 articles. *See* Ex. 5 (Opinion, Docket No. 3229) at 6-15, reported at *In re Phila. Newspapers, LLC*, 450 B.R. 99, 104-08 (E.D. Pa. Bankr. 2011); Ex. 6 (Order, Docket No. 3230) at ¶¶ 2, 4-5. It should likewise require the dismissal of Mr. Gaudini's claims with prejudice here.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 1334(b). This Motion involves a core proceeding, and this Court has retained exclusive jurisdiction to consider this matter pursuant to paragraph 40 of the confirmation order and Section 11.01, Article XI, of the plan, which provide as follows:

> Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in Article XI of the Plan over all matters arising out of, arising in or related to, the Chapter 11 Cases and the Plan.

Ex. 1 (Confirmation Order, Docket No. 2620) at ¶ 40.

> Exclusive Jurisdiction of Bankruptcy Court. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Cases to the fullest extent

permitted by applicable law, including, without limitation, jurisdiction to:

. . . .

(e) construe, take any action and issue such order, prior to and following the Confirmation Date . . , as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan . . . ;

(f) determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan and the Plan Supplement) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

. . . .

(m) hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or Asset Purchase Agreement.

Ex. 2 (Plan, Docket No. 2620-1) at Article XI, § 11.01.

2. Venue is proper in this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

## FACTUAL BACKGROUND

**A.  The sale, Plan, and Confirmation Order.**

3. On or about February 22, 2009, the Debtors, other than Debtor Philadelphia Media Holdings LLC, filed voluntary petitions for relief commencing the above-captioned cases under Chapter 11 of Title 11 of the United States Code in this Court. Debtor Philadelphia Media Holdings LLC filed its petition for relief under Chapter 11 on June 10, 2009.

4. On September 24, 2010, the Debtors filed their Fifth Amended Chapter 11 Plan As Of September 24, 2010 ("Plan"). (Docket No. 2599).

5. On September 30, 2010, the Bankruptcy Court entered an Order confirming the Plan ("Confirmation Order"). (Docket No. 2620, attaching copy of Plan at Docket No. 2620-1.)

6. Also on September 30, 2010, this Court entered an Order (A) Approving Addendum To Third Supplement To The First Amended Disclosure Statement With Respect To First Amended Chapter 11 Plan As Of October 27, 2009 And (B) Approving Amended Form Of Ballot For The Solicitation Of Votes To Accept Or Reject The Fifth Amended Joint Chapter 11 Plan As Of September 24, 2010. (Docket No. 2619.) In entering that Order, the Court approved the form of the Asset Purchase Agreement (the "APA") that was attached as Exhibit A to the Order. The Order, with the APA attached to it, is attached hereto as Exhibit 3.

7. The APA delineates the terms by which PN Purchaser Co., LLC purchased certain assets from Debtors, the sellers. Those assets included *The Philadelphia Inquirer*, the *Philadelphia Daily News*, and the newspapers' website.

8. The "Effective Date" under the confirmed Plan occurred on October 8, 2010. *See* Notice of Effective Date of Fifth Amended Joint Chapter 11 Plan As Of September 24, 2010 filed on October 22, 2010. (Docket No. 2683.)

9. On or about October 8, 2010, the transaction described in the APA closed.

10. As discussed in detail in the Argument section below, the Confirmation Order and APA excluded from the sale any liability for claims based on pre-October 2010 articles, and the Confirmation Order and Plan released the purchaser from such claims and enjoined such claims against the purchaser.

11. On October 8, 2010, PN Purchaser Co., LLC was converted to Philadelphia Media Network, Inc. *See* Ex. 7.

12. On March 30, 2012, Philadelphia Media, Inc. was converted to Philadelphia Media Network, LLC. *See* Ex. 8.

13. On May 7, 2014, this bankruptcy case was marked on the docket as terminated for statistical purpose.

14. On December 18, 2015, Philadelphia Media Network, LLC as converted to Philadelphia Media Network, PBC. *See* Ex. 9.

15. On May 20, 2019, the name of Philadelphia Media Network, PBC was changed to The Philadelphia Inquirer, PBC. *See* Ex. 10.

**B.    The March 2010 Article and February 2021 Lawsuit.**

16. In a March 5, 2010 article, then-Inquirer Staff Writer Derrick Nunally reported on criminal charges that had been brought against ex-Philadelphia police officer Vincent Gaudini, Sr. ("Vincent Sr.") for allegedly attempting to extort Harcum College in connection with unpaid dorm fees for one of his sons, Michael. ("March 2010 Article."). The March 2010 Article mentioned that Vincent Sr. was a Harcum College alum and that another of his sons, Vincent Gaudini, Jr. ("Vincent Jr."), had matriculated there, too. The March 2010 Article also included a photograph of Vincent Sr. with Vincent Jr. *See* Ex. 4 (Third Amended Complaint) at Ex. A (March 2010 Article, with photograph); *see also* Ex. 11 (more legible version of March 2010 Article, without photograph, available at https://www.inquirer.com/philly/news/breaking/20100305_Ex-Phila__cop_charged_in_extortion_attempt.html.).

17. On October 30 2020, counsel for Vincent Jr. contacted PI PBC's general counsel to complain about the March 2010 Article, which remained available on PI PBC's website. Focusing on the photograph, Vincent Jr.'s counsel stated that the March 2010 Article's

-5-

presence online was preventing Vincent Jr. from finding employment. *See* Ex. 12 (Oct. 30, 2020 letter). Without any obligation to do so, PI PBC then removed the photograph from its website.

18. On February 18, 2021, Vincent Jr. nonetheless sued PI PBC ("Gaudini Action"), contending that the March 2010 Article and accompanying photograph implied that Vincent Jr. had engaged in extortion and asserting that the March 2010 Article's online availability had prevented Vincent Jr. from finding employment in his chosen fiel for the past ten years. *See* Ex. 13 (Original Complaint) at ¶¶ 14-15, 17.

19. On April 12, 2021, undersigned counsel brought to Vincent Jr.'s counsel's attention this bankruptcy case and this Court's 2011 opinion enjoining state court defamation actions based on pre-October 2010 articles. In doing so, undersigned counsel highlighted that it did not matter to this Court that the articles at issue in those cases remained available online. Undersigned counsel therefore asked Vincent Jr.'s counsel to withdraw Vincent Jr.'s claims against PI PBC. *See* Ex. 14 (Apr. 12, 2021 email).

20. Vincent Jr. and his counsel have refused to do so. Vincent Jr.'s counsel has maintained that the bankruptcy proceedings do not preclude his client's claims against PI PBC because, by removing the photograph of Vincent Sr. and Vincent Jr. from its website in 2021, PI PBC "republished" the March 2010 Article. But after pointing to this purported "republication" as his justification for not withdrawing his client's claims against PI PBC, Vincent Jr.'s counsel filed a Third Amended Complaint that still based the claims against PI PBC on the photograph. *See* Ex. 4 (Third Amended Complaint) at ¶¶ 14-15, 17 & Ex. A (March 2010 Article, with photograph). When undersigned counsel asked how Vincent Jr. could simultaneously (1) seek to avoid the effect of the bankruptcy based on the purported "republication" of the March 2010 Article *without* the photograph and (2) base claims against PI

PBC on the version of the March 2010 Article *with* the photograph, Vincent Jr.'s counsel refused to answer. He also refused to provide any legal authority to support his argument that the removal of the photograph amounted to a "republication" of the March 2010 Article. *See* Ex. 15 (July 23-Aug. 13, 2021 emails).

**RELIEF REQUESTED**

21.     PI PBC seeks the entry of an order (i) reopening this bankruptcy case for the limited purpose of ruling on the arguments made and relief requested in this Motion; (ii) dismissing Vincent Jr.'s claims against PI PBC in the Gaudini Action and directing him to take all necessary action effectuate that dismissal; (iii) directing Vincent Jr. to cease any further acts to continue his claims against PI PBC in the Gaudini Action or to in any other manner seek to enforce his claims against PI PBC based on the March 2010 Article; and (iv) granting PI PBC such other and further relief as is just, including costs and attorney's fees incurred in connection with this Motion and defending against the Gaudini Action.

**ARGUMENT**

**A.     There is cause to open this bankruptcy case.**

22.     "Under 11 U.S.C. § 350(b), a bankruptcy court may reopen a closed case 'to administer assets, to accord relief to the debtor, or for other cause.'" *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 422 (3d Cir. 2013). The Third Circuit has "interpreted § 350(b) to give bankruptcy courts broad discretion to reopen cases after an estate has been administered." *Id.* at 423 (internal quotation marks and ellipsis omitted). Here, there is such "other cause," 11 U.S.C. § 350(b), for the Court to exercise that discretion and reopen this bankruptcy case. Specifically, as detailed in the Argument section below, Vincent Jr. has filed a state court lawsuit against PI PBC that, PI PBC contends, is precluded by the Confirmation Order that this Court issued and by the Plan and APA that this Court approved. This Court has exclusive jurisdiction to rule on PI

PBC's arguments to that effect and to enforce the Confirmation Order, Plan, and APA. *See* ¶ 1 above. In addition, this Court is well suited to interpret and enforce these documents—given that it issued or approved each of them. *See In re Lazy Days' RV Ctr.*, 724 F.3d at 423 ("[T]he Bankruptcy Court here was well suited to provide the best interpretation of its order . . . ." (internal quotation marks omitted)). Moreover, this Court has already interpreted and enforced the Confirmation Order, Plan, and APA in a situation like this one—that is, in ruling on a motion to enforce the Confirmation Order, Plan, and APA by barring state court claims based on pre-October 2010 articles. *See* Ex. 5 (Opinion, Docket No. 3229) at 6-15, reported at *In re Phila. Newspapers, LLC*, 450 B.R. at 104-08; Ex. 6 (Order, Docket No. 3230) at ¶¶ 2, 4-5. Therefore, this Court should reopen this bankruptcy case for the limited purpose of considering and ruling on PI PBC's request that the Court enforce the Confirmation Order, Plan, and Asset Agreement by barring Vincent Jr. from proceedings further with his state court action based on the March 2010 Article.

    **B.    Under the APA and Confirmation Order, PI PBC did not assume any liability for claims based on the March 2010 Article.**

        23.    The Confirmation Order approved the sale of the Debtors' assets free and clear of any liabilities other than those expressly assumed in the APA:

> <u>Sale</u>. The Debtors are hereby authorized to sell and transfer substantially all of their assets under sections 365, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141(c), 1145 and 1146(a) of the Bankruptcy Code under the terms and conditions of the Asset Purchase Agreement, free and clear of any Claims, Liens, Interests or encumbrances, other than Assumed Liabilities and Encumbered Assets as defined in the Asset Purchase Agreement.

Ex. 1 (Confirmation Order, Docket No. 2620) at ¶ 40.

        24.    The APA in turn expressly excluded any liability based on pre-closing acts, omissions, or events:

> Excluded Liabilities: Under no circumstance shall Purchaser assume or be obligated to pay, and none of the Assets shall be or become liable for or subject to, any of the Excluded Liabilities, including, but not limited to, the following Liabilities, which shall be and remain Liabilities of the Sellers:
>
> . . . .
>
> (d) Liabilities arising out of or in connection with claims, litigation and proceedings (whether instituted prior to or after Closing) **for acts or omissions that occurred, or arise from events that occurred, prior to the Closing Date**.

Ex. 3 (Order attaching APA, Docket No. 2619) at Ex. A (APA) at § 2.4(d) (bold added).

25. To avoid any possible confusion, the APA went on to provide:

> Excluded Assets and Liabilities. Notwithstanding anything to the contrary contained herein, Purchaser shall not . . . assume any liability for any of the Excluded Liabilities.

*Id.* at § 2.9.

26. Vincent Jr.'s claims arise from the publication of the March 2010 Article—an act that occurred before the October 2010 closing of the sale. PI PBC thus has not assumed any liability for Vincent Jr's claims.

27. In 2011, when PI PBC was known as Philadelphia Media Network, Inc.,[2] this Court reached the same conclusion as to claims based on October 2009 and June 2010 articles (brought by plaintiffs named Glunk and Brodie, respectively). After quoting the above APA sections in ruling on a motion much like this one, the Court explained that the APA was fatal to the plaintiffs' claims because the articles on which they based their claims pre-dated the closing:

---

[2] As explained above, PN Purchaser, LLC—the name of the purchaser in the APA—was converted to Philadelphia Media Network, Inc, and Philadelphia Media Network, Inc. was ultimately converted to PI PBC—with a few interim steps along the way. *See* ¶¶ 7, 11-12, 14-15.

> The Effective Date of the Plan was October 8, 2010. The sale closed that month. Both the Glunk and Brodie claims arose well prior to that date. The articles which Glunk claims defamed him were published in October 2009. In the case of Brodie, the allegedly defamatory material appeared on June 22, 2010. As both arose prior to the Closing date, PMN [i.e., Philadelphia Media Network, Inc.] did not assume liability for them.

Ex. 5 (Opinion) at 11-12, reported at *In re Phila. Newspapers, LLC*, 450 B.R. at 107.

28. The fact that the March 2010 Article remained online after the closing does not change the outcome here. That is because Pennsylvania has adopted the Single Publication Rule. *See* Pa. C.S.A. § 8341(b). Under the Single Publication Rule, """any one edition of a book or newspaper, or any one radio, television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.""" *In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012) (quoting *Graham v. Today's Spirit*, 468 A.2d 454, 457 (Pa. 1983) (in turn quoting Restatement (Second) of Torts § 577(A)(3))). As the Third Circuit explained, Pennsylvania adopted this Rule "[t]o avoid the potential for endless re-triggering of the statute of limitations" every time a mass media communication is circulated, viewed, read, or listened to. *Id.* at 174.

29. While the Pennsylvania Supreme Court does not appear to have had the opportunity to consider whether to apply the Single Publication Rule to internet publications, the Third Circuit predicted in an appeal from this bankruptcy case that "Pennsylvania courts would extend the single publication rule to publicly accessible material on the Internet." *Id.* In making that prediction, the court endorsed an out-of-state court's observation that, for purposes of the Single Publication Rule, there is "no rational basis upon which to distinguish publication of a book or report through traditional printed media and publication through electronic means." *Id.* And in a subsequent defamation and false light invasion of privacy suit under Pennsylvania law, the Third Circuit stated unequivocally: "The posting of an article on the Internet is the act of

publication. Its continuous availability to be viewed does not constitute republication." *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 Fed. Appx. 191, 195 (3d Cir. 2014). The court reasoned that "[i]f continuous availability constituted the act of republication, then '[a] publisher would remain subject to suit for statements made many years prior, and ultimately could be sued repeatedly for a single tortious act the prohibition of which was the genesis of the single publication rule.'" *Id.* at 195 (quoting *In re Phila. Newspapers, LLC*, 690 F.3d at 174-75).

30. Most on point, in its 2011 ruling regarding the claims by Glunk and Brodie based on October 2009 and June 2010 articles, this Court considered and resolved the precise issue that is before it here: whether the continued online availability of a pre-October 2010 *Inquirer* article constitutes a post-sale "republication" that can give rise to a new cause of action. In light of the Single Publication Rule, this Court said no:

> The articles which Dr. Glunk maintains are defamatory were published on October 3 and 4, 2009. The article which Ms. Brodie maintains cast her in a negative light appeared on June 22, 2010. While the articles may remain extant and available online, neither was republished *after* PMN [i.e., Philadelphia Media Network, Inc.][3] became the owner of the papers. Neither did PMN assume liability for defamation claims such as these. For that reason, the plaintiffs may not look to PMN for any recovery.

Ex. 6 (Opinion, Docket No. 3230) at 14, reported at *In re Phila. Newspapers, LLC*, 450 B.R. at 108. This Court then ordered that the plaintiffs' actions based on pre-October 2010 articles "shall be dismissed with prejudice," that the plaintiffs "shall immediately take the necessary action . . . to effectuate the dismissal with prejudice," and that the plaintiffs "immediately cease and refrain from any further acts to continue the claim and causes of action asserted in their

---

[3] *See* note 2 above.

respective Actions (whether in the Pennsylvania Courts or any other court) or to, in any other manner, seek to enforce such claims." Ex. 5 (Order, Docket No. 3229) at ¶¶ 2, 4-5.

31. In communications with undersigned counsel, Vincent Jr.'s counsel has attempted to distinguish his client's claims based on a pre-October 2010 article from those that this Court dismissed that were based on pre-October 2010 articles. His argument: PI PBC "republished" the March 2010 Article by removing the photograph of Vincent Jr. and his father after Vincent Jr.'s counsel complained to PI PBC's general counsel about the photograph in October 2020. For two reasons, this removal of the photograph should not change the outcome here. First, PI PBC is not aware of any authority to support the proposition that removing a photograph from an online article is a "republication" of the article's unchanged text. Again, undersigned counsel has asked Vincent Jr.'s counsel for any such authority, and he has provided none. *See* Ex. 15 (July 23-Aug. 13, 2021 emails). Second, even if the removal of the photograph were a "republication" of the March 2010 Article's text, Vincent Jr.'s claims against PI PBC in his operative, Third Amended Complaint are based on the version of the March 10 Article *with* the photograph. *See* Ex. 4 (Third Amended Complaint) ¶¶ 14-15, 17 & Ex. A (March 2010 Article, with photograph). Indeed, when asked after the filing of the Third Amended Complaint to support Vincent Jr.'s continued assertion that the March 2010 Article accused Vincent Jr.— not just Vincent Sr.—of extortion, Vincent Jr.'s counsel pointed to the photograph of Vincent Jr. with Vincent Sr. *See* Ex. 15 (July 23-Aug. 13, 2021 emails).

32. Therefore, because the Confirmation Order authorized the sale of the Debtors' assets free and clear of any liabilities other than those expressly assumed, and the APA excluded from the sale any liability for pre-closing acts, omissions, or events, this Court should order the dismissal of Vincent Jr.'s claims against PI PBC based on the March 2010 Article.

**C.   The Plan and Confirmation Order released PI PBC from any liability for claims based on the March 2010 Article and enjoined any claims against PI PBC based on the March 2010 Article.**

33. Even if the Confirmation Order and APA had not excluded from the October 2010 sale any liability for claims based on the March 2010 Article, the broad release and injunction provisions in the Confirmation Order and Plan likewise preclude Vincent Jr.'s claims against PI PBC.

34. The Confirmation Order provided, in pertinent part:

> Releases and Discharges. The discharge, release, indemnification and exculpation provisions set forth in Article X of the Plan are made in exchange for consideration, are in the best interest of the Debtors, the Estates, the Holders of Claims and Interests, are fair, equitable, reasonable, and are integral and necessary elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. The discharge, release, indemnification and exculpation provisions set forth in Article X of the Plan are: (1) the result of a carefully negotiated good-faith settlement about the Debtors and their major stakeholders; (2) meant to provide relief from future litigation, and the prospect of future litigation, that could have derailed the Debtors' restructuring efforts and possibly resulting in the shutdown and liquidation of their business; [and] (3) fair and necessary for successful Plan Confirmation . . . . No Claims are being released to the extent set forth in the last proviso of Section 10.02(b) of the Plan or exempted from the releases by Section 10.02(b) . . . .
>
> Ex. 1 (Confirmation Order, Docket No. 2620) at ¶ ZZ.
>
> Injunction. . . . . [N]o Holder of a Claim against any Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtors' respective successors or their respective property, except that from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against . . . the Purchaser . . . , or any of their property on account of such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or

continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

*Id.* at ¶ 31.

Released Claims.  As of the Effective Date, this Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is subject to exculpation under Section 10.01(b) of the Plan or released pursuant to Section 10.02 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against any (a) Debtor, (b) Releasee, or (c) Exculpated Person, or any of their respective property, **based on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date** with respect to or in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement or the Asset Purchase Agreement, all of which claims, demands, debts, rights, Causes of Action or liabilities shall be deemed released on and as of the Effective Date . . . .

*Id.* at ¶ 32(bold added).

35. The Plan in turn provided, in pertinent part:

"Releasees" means each of . . . (e) the Purchaser; . . . (h) the Debtors; and (i) with respect to each of the foregoing entities . . . , such entities' . . . employees, agents, . . . [and] representatives . . . , solely in their respective capacities as representatives of any of the foregoing.

Ex. 2 (Plan, Docket No. 2620-1) at § 1.01

Discharged Claims and Terminated Interests. . . . . [N]o Holder of a Claim against any Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtors' respective successors or their respective property, except that from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against . . . the Purchaser . . . , or any of their property on account of such Claims or Interests:  (i) commencing or continuing, in any manner or in any place, any

-14-

action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

*Id.* at § 10.01(a).

<u>Releases by Holders of Claims and Interests</u>.  Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, in consideration for the obligations of the Debtors under the Plan and the Asset Purchase Agreement and the payments, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan and the Asset Purchase Agreement, each Person (excluding any of the Debtors) that has held, currently holds or may hold a Claim or Interest, and any Affiliate of any such Person (as well as any trustee or agent on behalf of each such Person), shall be deemed to have forever waived, released and discharged the Releasees from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever . . . , whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are **based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date** in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement or the Asset Purchase Agreement other than Claims or liabilities arising out of or relating to any act or omission that constitutes a failure to perform the duty to act in good faith and where such failure to perform constitutes willful misconduct, gross negligence or fraud; . . . *provided further, however*, that this section 10.02(b) shall not release any natural person Releasee under subsection (i) of the defined term Releasees from any Claim or Cause of Action asserted against such natural person only if such Claim or Cause of Action was pending as of June 25, 2010 and is covered by insurance, to the extent of such insurance coverage.  The Plaintiffs listed on **Exhibit A** to the Plan are not bound by the releases provided for in Section 10.02(b) of the Plan.

*Id.* at § 10.02(b) (first bold added)

>    <u>Injunction</u>.  Except as otherwise specifically provided herein, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person (excluding any of the Debtors) that has held, currently holds, or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to this Section 10.02 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against any Releasee or any of their respective Property.

*Id.* at § 10.02(c).

36. These release and injunction provisions in the Confirmation Order and Plan combine to preclude claims based on acts or omissions that occurred before the Plan's October 8, 2010 Effective Date—such as claims based on pre-October 2010 articles.  As this Court explained in 2011 when addressing claims based on October 2009 and June 2010 articles, there are exceptions for (1) claims that are based on conduct that *both* (a) violated a contractual duty of good faith *and* (b) constituted willful misconduct, gross negligence or fraud and (2) certain claims covered by the Debtors' insurance that were pending as of June 25, 2010 and listed on Exhibit A to the Plan.  Ex. 5 (Opinion, Docket No. 3229) at 6-11, reported at *In re Phila. Newspapers, LLC*, 450 B.R. at 103-06.  This Court concluded that claims based on the October 2009 and June 2010 articles did not fall within either exception and were therefore precluded by the release and injunction provisions.  *Id.*  The Court should reach the same conclusion here as to Gaudini's claims based on the March 2010 Article.

37. As discussed above, the fact that the March 2010 Article—like the October 2009 and June 2010 articles—remained available online after the sale closed and the Plan became effective does not matter.  Nor does the fact that, in 2021, PI PBC removed the photograph of Vincent Jr. and Vincent Sr.  *See* ¶¶ 28-31 above.

**CONCLUSION**

38. For all of these reasons, PI PBC respectfully requests that the Court enter the attached proposed order (i) reopening this bankruptcy case for the limited purpose of considering and ruling on the arguments made and relief requested in this Motion; (ii) dismissing Vincent Jr.'s claims against PI PBC in the Gaudini Action and directing him to take all necessary action effectuate that dismissal; (iii) directing Vincent Jr. to cease any further acts to continue his claims against PI PBC in the Gaudini Action or to in any other manner seek to enforce his claims against PI PBC based on the March 2010 Article; and (iv) awarding PI PBC its costs and attorneys' fees incurred in connection with the preparation, filing, and arguing of the Motion and in defending against underlying Gaudini Action.

TROUTMAN PEPPER HAMILTON SANDERS, LLP

Date: August 23, 2021
Philadelphia, Pennsylvania

/s/ Eli Segal
Eli Segal, Esq.
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

*Counsel to The Philadelphia Inquirer, PBC*